[No. B094105. Second Dist., Div. Four. June 24, 1996.]

In re the Marriage of RUEDIGER AND DINA BRAENDLE.
RUEDIGER BRAENDLE, Respondent, v.
DINA BRAENDLE, Respondent;
AMERICAN OVERSEAS AIR FREIGHT, INC., Appellant.

COUNSEL

Bryan Cave, Frank E. Merideth, Jr., and Wendy A. Loo for Appellant.

Buchalater, Nemer, Fields & Younger, Jeffrey S. Wruble, Holly J. Fujie, K. Todd Shollenbarger and Douglas L. Vining for Respondent Wife.

No appearance for Respondent Husband.

OPINION

BARON, J.—The parties to this appeal, respondent Dina Braendle and appellant American Overseas Air Freight, Inc., (American Overseas) are both creditors of Ruediger Braendle and have conflicting claims to stock owned by him. We conclude that Dina Braendle holds a prior perfected security interest, and therefore has precedence. We further hold that American Overseas may not recover the debt owed by Ruediger from her or property assigned to her in the marital dissolution. Finally, we hold that the trial court erred in transferring *title* to the stock to Dina. As secured creditor, Dina was entitled to *possession*, not title, and must comply with the requirements of division 9 of the California Uniform Commercial Code.

### FACTUAL AND PROCEDURAL BACKGROUND

The marriage of Dina and Ruediger Braendle was dissolved by judgment entered December 11, 1991. In the division, Ruediger Braendle was awarded

the stock in American Overseas, valued at $1,438,651.[1] Dina was awarded certain real and personal property and pension and bank accounts valued at less than the stock. To equalize the division, Ruediger was ordered to pay Dina the sum of $483,393. "Said equalizing payment" was "ordered to be secured by the stock in American Overseas Airfreight, awarded to [Ruediger]." In addition, Ruediger was "ordered to forthwith turn over all stock held in said corporation to [Dina's] counsel, Mosten and Wasserstrom, to hold as security until such time as the equalizing payments are made to [Dina]."

Ruediger appealed from the judgment. The court granted his motion to stay enforcement of the judgment pending appeal, and ordered that the stock certificates be held by the court in lieu of an undertaking, along with the property deeds and pink slips. Ruediger delivered the stock certificates to the clerk of the court. This court affirmed the judgment in an unpublished decision dated February 17, 1994.

Ruediger had listed a debt to American Overseas in the amount of $58,000 on his schedule of assets and debts filed in the dissolution proceedings. The order of dissolution did not assign the debt for payment. On May 29, 1994, after the judgment of dissolution was entered, but before the appeal was concluded, American Overseas brought a breach of contract action against Ruediger alone. A judgment was entered in the amount of $70,842.52 plus "all attorneys' fees, costs and disbursements incurred in enforcing and executing this Judgment"[2] on June 22, 1993. American Overseas obtained a writ of execution, filed a notice of judgment lien, filed a notice of lien in the appeal, and filed abstracts of judgment in Orange, Riverside, and Los Angeles Counties. In addition, American Overseas persuaded the sheriff to levy a writ of execution against the stock certificates in the hands of the clerk of the court. The clerk turned the stock certificates over to the sheriff's office which retained possession indicating its willingness to hold a sale. Before the stock could be sold, however, Ruediger filed bankruptcy petitions in Arizona, first under chapter 13 and then under chapter 7 of title 11 of the United States Code.

At the joint request of American Overseas and Dina Braendle, the Arizona bankruptcy court issued an order granting relief from the automatic stay "to allow American Overseas to pursue and complete a sheriff's sale of the

---

[1]The valuation was arrived at based on the uncontradicted testimony of the wife's accountant at trial that the business was worth $3.9 million. Ruediger did not make an appearance to contest the matter, but on appeal contended that the figure was far in excess of the true value of the business.

[2]American Overseas contends that the total due including interest and attorney fees as of May 3, 1995, was $101,344.38.

American Overseas stock owned by Debtor, pursuant to state law and to apply the proceeds of such sale to the obligations of Debtor to American Overseas and Dina Braendle, as these interests may appear pursuant to the laws of the State of California" and "to allow Dina Braendle to pursue [her] state law of remedies . . . with respect to the Debtor's 'undertaking' . . . pursuant to C.C.P. §§ 917.1 *et seq.* and to conclude currently pending litigation in Los Angeles County Superior Court, including but not limited to alimony and property settlement issues[.]" Any excess in proceeds over the amounts owed to American Overseas and Dina was to be "deposited with the Trustee appointed in this matter . . . to be held and accounted for . . . as part of the Debtor's Chapter 7 estate[.]"

American Overseas noticed its intention to go forward with the sheriff's sale. Dina Braendle moved ex parte before the family law court for an order releasing the stock certificates to her. At the initial ex parte hearing, the court ordered the sheriff to return the stock certificates to the superior court clerk. American Overseas filed an opposition in which it urged the court to assign the "community debt" to Dina under section 2556 of the Family Code,[3] or to recognize its "prior" lien. In its final ruling, the court found that the security interest described in the judgment of dissolution had priority over American Overseas' judgment lien and that the certificates had been improperly transferred from the court to the sheriff. Since the parties were "unable to determine the value of the shares" or "to agree on whether the value of the subject share certificate will cover [Ruediger's] dissolution judgment liability to [Dina]," the court transferred ownership and possession of the stock to Dina. American Overseas appealed from this order.[4]

DISCUSSION

I

Although American Overseas purports to raise a number of issues in its appeal, the determinative question here concerns which party has a priority

---

[3]Section 2556 of the Family Code provides: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

[4]American Overseas describes the order disposing of the property as an appealable order following final judgment. (See Code Civ. Proc., § 904.1, subd. (a)(2).) Alternatively, Dina Braendle's ex parte motion could be construed as a third party claim (see Code Civ. Proc., § 720.110 et seq.), in which case the order was appealable under section 720.420 of the Code of Civil Procedure.

interest in the stock owned by Ruediger Braendle. American Overseas's contention that as a disclosed community creditor, it should be allowed to satisfy its judgment against community assets—including the stock—misses the point. While Dina and Ruediger were married, section 910 of the Family Code permitted Ruediger's creditors to go after community property to satisfy his debts "regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Once the marriage was dissolved and division of community property had occurred, however, the provisions of section 916 of the Family Code control.[5] Under that statute, ". . . the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, *unless the debt was assigned for payment by the person in the division of the property.*" (Fam. Code, § 916, subd. (a)(2), italics added.) Moreover, "[i]f a money judgment for the debt is entered after the division, the property [received by the married person in the division] is not subject to enforcement of the judgment and the judgment may not be enforced against the married person, unless the person is made a party to the judgment for the purpose of this paragraph." (Fam. Code, § 916, subd. (a)(3).)

According to the Law Revision Commission Comment: "When enacted in 1984 (as former Civil Code Section 5120.160), subdivisions (a)(2)-(3) reversed the former case law rule that a creditor may seek enforcement of a money judgment against the former community property in the hands of a nondebtor spouse after dissolution of the marriage. [Citation.] [¶] Subdivision (a)(2) makes clear that former community estate property received by the nondebtor spouse at division is liable only if the nondebtor spouse is assigned the debt in division. In the case of a judgment entered after the division of property, the nondebtor spouse must be made a party for due process reasons. . . ." (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (1994 ed.) § 916, p. 351; see also 18 Cal. Law Revision Com. Rep. (Dec. 1986) pp. 59-60; 17 Cal. Law Revision Com. Rep. (Jan. 1984) p. 38.)

The debt owed by Ruediger to American Overseas was not assigned to Dina in the division and Dina was not named as a party in the judgment entered after the dissolution. It is abundantly clear, therefore, that Dina is not personally liable to American Overseas on the loan, nor is any portion of the community property assigned to her reachable by American Overseas to satisfy the debt.

---

[5] Although the Family Code was enacted in 1992 with an effective date of January 1, 1994, long after the significant events here transpired, Family Code section 916 continues former Civil Code section 5120.160, enacted in 1984, without substantive change. (Compare Stats. 1984, ch. 1671, § 9, p. 6019 with Stats. 1992, ch. 162, § 10.)

American Overseas points to section 2556 of the Family Code which gives to the court the jurisdiction to reopen marital proceedings to award community assets or liabilities that have not been previously adjudicated. The statute provides that "[a] *party* may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment." (Italics added.) Neither Dina nor Ruediger, the only parties to the dissolution proceeding, has sought to reopen the judgment for purposes of allocating the debt. Nor if they had would American Overseas's position be greatly improved. Ruediger was found to owe Dina over $483,000. Recognition of his $58,000 American Overseas debt as one belonging to the community would in all likelihood have resulted in a slight reduction of the amount owed from Ruediger to Dina, not assignment of the debt to her. We would still be faced with the conflicting claims to the stock to which we now turn.

## II

As community property assigned to Ruediger in the division, the stock is reachable to satisfy the debts owed to his creditors, including American Overseas. (Fam. Code, § 916, subd. (a)(1).) ▮ The question is whether Dina's interest, based on the amounts awarded to her in the dissolution judgment, takes priority over American Overseas' judgment lien. This turns on whether Dina had a perfected security interest in the subject stock. (See 3 Witkin, Summary of Cal. Law (9th ed. 1987) Secured Transactions in Personal Property, § 49, p. 474 ["A lien creditor is prior if he becomes such before the security interest is perfected."].)

The perfecting of security interests in stocks, or "certificated" and "uncertificated securities" as they are known, is governed by division 8 of the California Uniform Commercial Code. (Cal. U. Com. Code, § 8101 et seq.) Section 8321, subdivision (1) provides: "A security interest in a security is enforceable and can attach only if both: [¶] (a) The security, if certificated, is in the possession of the secured party pursuant to agreement, or, as to any other certificated security and any uncertificated security, the debtor has signed a security agreement which contains a description of the collateral. (Section 9110.) [¶] (b) The security is transferred to the secured party or a person designated by him or her pursuant to a provision of subdivision (1) or Section 8313." Subdivision (2) provides: ". . . A security interest is perfected by possession of a certificated security from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this division. The security interest may be otherwise perfected as provided in this division before or after the

period of possession by the secured party." Subdivision (3) makes clear that "no filing is required to perfect the security interest."

The apparent conflict in the statute between perfection under California Uniform Commercial Code section 8321, subdivision (1), through security agreement and transfer, and perfection under subdivision (2), through possession, is explained in the Legislative Committee Comment: ". . . Section 8321(1)(a) continues the present requirement of Section 9203(1)(a) that, in order for a nonpossessory security interest to attach, the debtor must have signed a security agreement. Section 8321(2) carries over certain rules regarding perfection by possession contained in current Section 9305, which rules will continue to be applicable to certificated securities." (Legis. committee com., 23C West's Ann. Cal. U. Com. Code (1990 ed.) § 8321, p. 241.)

The question of when possession by a third party may be deemed to be possession by the party claiming the security interest was examined by the Ninth Circuit Bankruptcy Appellate Panel in the case of *In re Raiton* (9th Cir. 1992) 139 Bankr. 931. The facts in that case are substantially similar to the present one. As part of a division of property agreement, debtor Morris Raiton executed a promissory note in favor of Evelyn Raiton, secured by stock certificates and an interest in a limited partnership. Debtor's partner, Forrest Gardner, was designated to act as "escrow holder" of the certificates on behalf of Evelyn. He held the certificates for several years and then, without notice to Evelyn, turned them over to the Internal Revenue Service (IRS) pursuant to a levy on the debtor's property. Following the bankruptcy filing, the debtor sought to avoid Evelyn's interest in the stock on the ground it was unperfected in that she never had "possession" or that transfer to the IRS resulted in loss of "possession." The court determined that California Uniform Commercial Code section 8321, subdivision (2) was intended to continue the concept of possession codified in California Uniform Commercial Code section 9305, and that "applying CCC § 9305 instead of CCC § 8321 to the facts in the present case has no affect on the outcome." (139 Bankr. at p. 936, fn. 3.) The fact that Evelyn never had personal possession of the stock certificates was not controlling since "[u]nder CCC § 9305, possession is effectuated when the collateral is physically transferred to the secured party or its agent or to a bailee who has been notified of the secured party's interest." (139 Bankr. at p. 936.) The court found "the underlying policy" behind the code provisions to be satisfied by its holding because "possession of instruments by a third party coupled with the owner's lack of possession alerts prospective creditors that the ownership rights may be restricted or encumbered. [Citations.]" (*Id.* at p. 937.)

The court in *Raiton* went on to determine the issue of whether transfer of possession to an unauthorized party—the IRS—had any impact on the issue

of perfection. It concluded: "[O]nce a debtor has parted with possession of the collateral and the secured party, personally or through an agent, obtains possession, perfection continues until the debtor exerts or regains control over the collateral. Here, there is no evidence that Debtor gained such control. To hold that simple loss of possession by the secured party per se invalidates the security interest would invite uncertainty if not injustice: a secured creditor would automatically lose its security interest which is dependent on possession whenever collateral is misplaced, converted, or wrongfully surrendered by the bailee to whom the collateral is entrusted." (139 Bankr. at p. 937.)

Here, possession of the stock certificates was transferred by Ruediger Braendle to the clerk of the court to secure the debt to Dina Braendle. This constituted notice to the world in general, and American Overseas in particular, that his ownership rights were encumbered. Dina Braendle had a perfected security interest in the stock from the time the court took possession on her behalf, and the unauthorized transfer to the sheriff's office did not deprive her of that security interest.

## III

█ American Overseas contends that the trial court erred in transferring ownership in the stock to Dina Braendle outright instead of ordering a sale and use of proceeds to satisfy her debt, with any remainder to go to American Overseas and the trustee. Apparently, the trial court did not believe the stock had sufficient value to cover the debt owed to Dina, although, as the order specifically notes, the question was left open.

As a secured creditor Dina has "the right to take possession of the collateral." (Cal. U. Com. Code, § 9503.) The appropriate procedures to ensure that a secured creditor with possession of collateral does not obtain a windfall at the expense of other creditors are outlined in division 9 of the California Uniform Commercial Code. (Cal. U. Com. Code, § 9101 et seq.) Under section 9504, "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral . . ." and apply the proceeds as set forth in the statute. Alternatively, under section 9505, subdivision (2), the secured party "may . . . propose to retain the collateral in satisfaction of the obligation." In that case, notice must be given to the debtor and other secured parties who may force a sale under section 9504. (Cal. U. Com. Code, § 9505, subd. (2).) Simply transferring title to the secured creditor without regard for the procedures of division 9 is not an option. (See *Resolution Trust Corp.* v. *Winslow* (1992) 9 Cal.App.4th 1799, 1813-1814 [12 Cal.Rptr.2d 510] [inappropriate for trial court to order debtor to convey

stock assigned as security for a debt to creditor; secured party must utilize the procedures specified in the California Uniform Commercial Code].)

Accordingly, the finding that Dina Braendle is the "rightful owner of the subject share certificate representing 10,500 share[s] of [American Overseas] stock" must be reversed. She was, however, entitled to "immediate possession" as the court also found. Whether or not she thereafter complied with her duties as a secured creditor in possession of the collateral is not now properly before us and must be the subject of a later proceeding.

## DISPOSITION

The finding that Dina Braendle is the "rightful owner of the subject share certificate representing 10,500 share[s] of AOA stock" is reversed. In all other respects the judgment is affirmed. Each party is to bear its own costs.

Epstein, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied July 17, 1996.