[No. E021439. Fourth Dist., Div. Two. July 22, 1999.]

JAMES L. GAGAN, Plaintiff and Respondent, v.
JAMES E. GOUYD et al., Defendants and Appellants.

**COUNSEL**

E. Day Carman for Defendants and Appellants.

Michael Zitomer for Plaintiff and Respondent.

**OPINION**

GAUT, J.—

### 1. *Introduction*

On November 23, 1994, James L. Gagan (Gagan) obtained a judgment against James E. Gouyd (James) and Victor Sharar (Victor) for $1,687,500. He sought to satisfy that judgment against James and his wife Constance and against Victor and his wife Mary Lois. Gagan asserted that both couples had made various property transfers which he concluded were fraudulent as defined by the Uniform Fraudulent Transfer Act (Civ. Code, § 3439.01 et seq.)[1] Gagan filed this action, seeking an order setting aside those transfers.

James and Constance, formerly husband and wife, appeal from a judgment in favor of Gagan that found that the transfer of assets between them under a marital settlement agreement entered in connection with the dissolution of their marriage was a fraudulent conveyance.

Victor and Mary Lois appeal from a judgment in favor of Gagan which found that assets claimed by Mary Lois were community property, not separate property as she claimed, and therefore were subject to the claims of Gagan as a judgment creditor of Victor.

We reverse the judgment against James and Constance because we find that a transfer of assets provided in a marital settlement agreement is not a fraudulent conveyance. We affirm the judgment against Victor and Mary Lois because we find that the property sought by Gagan was community property and was subject to a creditor's levy.

### 2. *Facts*

Gagan sued Victor and James, among others, in United States District Court for the Northern District of Indiana on December 31, 1987, alleging, in part, a violation of the Racketeer Influenced and Corrupt Organizations Act. (18 U.S.C. § 1961 et seq.) A judgment was entered against them on November 23, 1994, for $1,687,500, after a July 20, 1994, jury verdict.

On February 26, 1996, Gagan filed an action against Victor and Mary Lois, individually and as trustees of the VMS 1992 Trust, and against James and Constance, individually and as trustees of the Lakeview 1993 Trust, to set aside fraudulent transfers. Gagan alleged that James and Constance

---

[1] All further statutory references are to the Civil Code, unless otherwise stated.

fraudulently transferred four Riverside County parcels of real property into the revocable Lakeview 1993 Trust on May 5, 1994, and that James fraudulently transferred the entire Lakeview 1993 Trust to Constance by a marital settlement agreement dated September 1, 1994. The marriage of James and Constance was dissolved on December 22, 1994, by a court decree.

Gagan also alleged that Victor and Mary Lois created the revocable VMS 1992 Trust on April 1, 1992, and in December 1994 and January 1995, they transferred various items of community personal property into the VMS 1992 Trust with the intent to hinder, delay, or defraud their creditors.

Gagan also alleged separate counts of conspiracy against each couple.

On August 20, 1997, the trial court entered judgment against both couples on the counts for fraudulent conveyance, ordered the challenged transfers be set aside, and imposed a constructive trust on those assets for the benefit of Gagan. The trial court entered judgment in favor of both couples on Gagan's conspiracy counts.

### 3. *Standard of Review*

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . ." (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925], original italics.) In applying the substantial evidence test, this court resolves all issues of credibility and conflicts in the evidence in favor of the judgment. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

In this case we apply the substantial evidence rule to the determinations of fact by the trial court. We review de novo any questions of law, and the application of that law to the facts since such questions can have a significance beyond the confines of the case then before the court. (*Ghirardo* v. *Antonioli* (1994) 8 Cal.4th 791, 800-801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

In determining whether transfers occurred with fraudulent intent, we apply the preponderance of the evidence test (*Whitehouse* v. *Six Corp.* (1995) 40 Cal.App.4th 527, 530 [48 Cal.Rptr.2d 600]), even though we recognize that some courts believe that the test requires clear and convincing evidence. (*Reddy* v. *Gonzalez* (1992) 8 Cal.App.4th 118, 123 [10 Cal.Rptr.2d 55].)

#### 4. *Community Liability for Debts of Victor and James*

The general rule is that the assets of the community are liable for the debts of either party to the marriage, incurred during the marriage. (Fam. Code, § 910, subd. (a).) There are exceptions to that general rule. The separate assets of the nondebtor spouse may not be used to satisfy such debts. (Fam. Code, § 913, subd. (a)(2).) Mary Lois relies upon this section in her appeal.

Community property transferred to the nondebtor spouse as part of the distribution of community assets upon dissolution of the marriage are not liable for the debts of the debtor spouse unless the nondebtor spouse was assigned responsibility for all or some portion of the debt. (Fam. Code, § 916, subd. (a)(2).) Constance relies upon the latter section in her appeal from the trial court judgment.

#### 5. *Gagan's Claim of Fraudulent Conveyance*

California's Uniform Fraudulent Transfer Act (§ 3439 et seq.) provides that a creditor may avoid a transfer made with the "actual intent to hinder, delay, or defraud any creditor of the debtor," (§ 3439.04, subd. (a)) or a transfer made without receiving reasonably equivalent value in exchange at a time when the debtor was in a business for which the remaining assets were unreasonably small in relation to the business, the debtor intended to incur debts beyond his ability to pay as they became due, or the debtor made the transfer without receiving equivalent value and was insolvent at the time or became insolvent as a result of the transfer. (§§ 3439.04, 3439.05, 3439.07.)

The Uniform Fraudulent Transfer Act defines a creditor as a person who has a right to payment, whether or not the right is reduced to judgment or is disputed. (§ 3439.01, subds. (b) and (c).)

In this case, Gagan filed his original action against James and Victor in 1987 and therefore he was a creditor of James and Victor before either established a trust. If transfers were made to those trusts with the intent to hinder, delay, or defraud Gagan, then those transfers would be subject to an order setting them aside under section 3439.07. Likewise, if James's 1994 transfer of his interest in the trust to Constance pursuant to their marital settlement agreement and dissolution judgment was made with the intent to hinder, delay, or defraud Gagan, that too could be set aside, unless Family Code section 916 applies.

#### 6. *Gouyd Transfers*

The trial court found that the conveyances of James and Constance of real and personal property to the Lakeview 1993 Trust and James's later

conveyance of the trust to Constance were fraudulent. As a remedy, the trial court imposed a constructive trust of all assets in the trust for the benefit of Gagan. Since the property transferred to Constance was a distribution of community assets in connection with the dissolution of her marriage, the issue is whether that transfer can be set aside under section 3439 et seq.

James and Constance contend Family Code section 916 precludes the trial court from setting aside the trust transferred to Constance under the terms of their marital settlement agreement.

Family Code section 916 provides that ". . . the property received by the person in the division [of community assets] is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property." (Fam. Code, § 916, subd. (a)(2).)

In *In re Marriage of Braendle* (1996) 46 Cal.App.4th 1037 [54 Cal.Rptr.2d 397], our colleagues in the Second Appellate District found that Family Code section 916 applied where the trial court directed stock to be held by a third party for the wife as security for the husband's obligation to make an equalization payment to his wife as a part of the dissolution of their marriage. The dissolution and stock assignment occurred in 1991, but the dissolution judgment was not entered before a creditor of the husband obtained a judgment against him alone. The creditor sought to enforce the judgment by levying upon the stock held as security for the wife. The court found that "[o]nce the marriage was dissolved and division of community property had occurred, . . . the provisions of section 916 of the Family Code control." (*In re Marriage of Braendle, supra*, 46 Cal.App.4th at p. 1042.) The creditor was precluded from levying upon the stock.

In *Lezine* v. *Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 65 [58 Cal.Rptr.2d 76, 925 P.2d 1002], the California Supreme Court, referring to former section 5120.160, the predecessor of Family Code section 916, observed: "Under this provision, following the division of property, the community property awarded to one spouse no longer is liable for marital debts that are assigned to the other spouse, with the exception that the award of community real property to one spouse that is subject to a lien remains liable for satisfaction of the lien, i.e., the lien remains enforceable to satisfy the underlying debt."

*Braendle* and *Lezine* support the claim of James and Constance that the property transferred to Constance as a part of the dissolution proceeding is not available to satisfy Gagan's judgment. In opposition, Gagan argues that

Family Code section 916 does not apply when property has been fraudulently transferred from husband to wife. He argues that the trial court found that both James and Constance fraudulently transferred property into the trust and then James fraudulently transferred his interest in the property held in trust to Constance. Gagan dismisses the *Braendle* case because the division of the community property occurred three years prior to the creditor's judgment against the husband, whereas in this case the judgment was entered the month before the dissolution judgment, and six months after the parties entered the marital settlement agreement.

We reject Gagan's interpretation of Family Code section 916 for the following reasons. First, the transfer of the property to the Lakeview 1993 Trust was not a fraudulent transfer because Constance and James remained the beneficiaries. Section 3439.01, subdivision (i) defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ." In this case, the transfer by James and Constance did not result in "disposing of or parting with an asset or an interest in an asset." The property remained available to creditors. There is no evidence in this case that the transfer by James and Constance to a revocable trust of which they were the beneficiaries rendered the property unavailable to the creditors. Property in a revocable trust is subject to creditor claims to the extent of the debtor's power of revocation. (Prob. Code, § 18200.) Hence, the trial court erred in finding that transfer of the real property to the trust was a fraudulent conveyance.

Second, James's transfer of the assets held by the trust to Constance occurred in connection with the dissolution of their marriage. Although there is authority which holds that transfers between spouses are subject to the laws governing fraudulent transfers (see *Reddy* v. *Gonzalez, supra,* 8 Cal.App.4th 118, 120; *Hansford* v. *Lassar* (1975) 53 Cal.App.3d 364, 374 [125 Cal.Rptr. 804]), neither party has cited any authority which holds that transfers as a part of a dissolution proceeding are subject to the same laws.

Third, the Gagan debt, apparently incurred as the result of James's tort, was not assigned to Constance as a part of the dissolution proceeding. Constance therefore should not be held liable for the intentional tort of James. (*In re Marriage of Bell* (1996) 49 Cal.App.4th 300, 309 [56 Cal.Rptr.2d 623].)

Fourth, as a matter of policy, we believe that to engraft the fraudulent transfer remedies onto a valid and approved marital settlement agreement would result in needlessly complicating the already emotionally laden dissolution process. It might result in the unraveling of a dissolution agreement

painstakingly negotiated between the parties and their attorneys. We do not carry the rights of an alleged defrauded creditor that far, absent the express intent by the Legislature to do so. Gagan has provided us with no evidence of such intent.

Hogoboom and King, California Practice Guide: Family Law (The Rutter Group 1999) paragraph 8:778, at page 8-191, comments as follows as to the liability of a nondebtor spouse: ". . . *unless the nondebtor spouse was assigned the debt* by the property division judgment, he or she is *not personally liable* thereafter for the other spouse's debts incurred before or during marriage. The nondebtor spouse's separate property *and his or her share of the community estate* awarded by the dissolution judgment may be reached by creditors *only* if payment of the debt was *assigned* to the nondebtor spouse in the property division." (Original italics.)

Constance was the nondebtor spouse. As a matter of law, the trial court erred in concluding that the property she received as a part of the marriage dissolution was subject to the judgment of Gagan.

### 7. *Sharar Transfers*

The trial court found that the December 1994 and January 1995 transfers by Victor to Mary Lois were fraudulent as to a limited partnership interest in Apache Cablevision, the PaineWebber account, the VMS 1992 Trust, and the First Interstate checking account. It ordered the transfers set aside as to Gagan to the extent necessary to satisfy Gagan's claims and ordered all such assets held in constructive trust for the benefit of Gagan.

The only issue raised by Mary Lois on appeal is whether her interest in the Apache Cablevision limited partnership was her separate property, or whether it was community property. If it was her separate property, it would not be liable for Victor's debt. (Fam. Code, § 913, subd. (b)(1).) If it was community property, it was liable for the debts of Victor. (Fam. Code, § 910, subd. (a).)

To support her claim that the Apache Cablevision limited partnership interest was separate property, Mary Lois apparently relies solely on the testimony of Victor. However, the presumption is that property acquired by married persons during the marriage is community property. (Fam. Code, § 760.) Mary Lois has the burden of proving by clear and convincing evidence that the property is separate, not community. (*In re Marriage of Ashodian* (1979) 96 Cal.App.3d 43, 47 [157 Cal.Rptr. 555].) She relied upon the testimony of Victor, which did not carry that burden. He testified that

Mary Lois and he had been married for 25 years, and that the interest in Apache Cablevision was acquired during their marriage. Neither Victor nor Mary Lois cites any evidence supporting their claim that the interest of Mary Lois was her separate property. On the other hand, there was substantial evidence to support the trial court finding that the property was community property, including Victor's admission of that fact.

We have some difficulty in understanding why the case against Victor and Mary Lois was couched in terms of fraudulent conveyance. All of the property they held, whether in a revocable trust, or in the names of Victor or Mary Lois alone, was community property and therefore available to satisfy Gagan's judgment. Victor's transfer of property to Mary Lois therefore was not a "transfer" within the meaning of the Uniform Fraudulent Transfer Act (§ 3439.01, subd. (i)) because it did not dispose of or part with an asset or an interest in an asset (*Ibid.*) with the "intent to hinder, delay, or defraud" Gagan. (§ 3439.04, subd. (a).) The Sharars retained their assets and all were available to satisfy the judgment of Gagan. Nevertheless, the trial court's order imposing a constructive trust of those assets for the benefit of Gagan was not prejudicial.

## 8. *Disposition*

The judgment setting aside the transfer of assets from James to Constance pursuant to the marital dissolution agreement and imposing a constructive trust on those assets for the benefit of Gagan is reversed. The judgment in favor of James and Constance on the third count for conspiracy is affirmed. Costs are awarded to James and Constance.

The judgment setting aside the transfer of assets from Victor to Mary Lois and imposing a constructive trust on those assets for the benefit of Gagan is affirmed. The judgment in favor of Victor and Mary Lois on the fourth count for conspiracy is affirmed. Costs are awarded to Gagan.

Hollenhorst, Acting P. J., and Ward, J., concurred.