DA 13-0847

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 282N

623 PARTNERS, LLC,

       Plaintiff and Appellee,

   v.

GLENDA HUNTER, individually and as
Trustee of THE R. LARRY HUNTER and
GLENDA HUNTER MONTANA
REVOCABLE TRUST, and LARRY TODD
HUNTER,

       Defendants and Appellants.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                In and For the County of Lincoln, Cause No. DV 11-94
                Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           J. Tiffin Hall, Attorney at Law, Eureka, Montana

       For Appellees:

           Sean S. Frampton, Morrison & Frampton, PLLP, Whitefish, Montana

           Andy Eaton, Attorney at Law, Atlanta, Georgia

                      Submitted on Briefs:  August 20, 2014
                                 Decided:  October 21, 2014

Filed:

                                 _____
                                        Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Glenda Hunter, individually and as Trustee of The R. Larry Hunter and Glenda Hunter Montana Revocable Trust, and Larry Todd Hunter appeal from orders of the Nineteenth Judicial District Court, Lincoln County, granting 623 Partners, LLC's motions for summary judgment. We affirm and remand.

¶3 Plaintiff, 623 Partners, LLC (623 Partners), is a limited liability company formed under the laws of the state of Florida.

¶4 R. Larry Hunter (Larry) and his wife, Defendant Glenda Hunter (Glenda) are Georgia residents who owned and operated Larry Hunter Development Co. (Hunter Development), a limited liability company located in the state of Georgia. Hunter Development developed residential subdivisions and operated primarily in Georgia until the early 2000's when the company expanded operations into Montana. Defendant Larry Todd Hunter (Todd) is Larry and Glenda's adult child who moved to Fortine, Montana, in 2002 and operated a contracting business.

¶5 Sometime after Todd moved to Montana, Hunter Development purchased five (5) parcels of land in Lincoln County, totaling approximately 112 acres. This lawsuit primarily concerns a 42-acre parcel, a 27-acre parcel, and a 24-acre parcel (collectively the Montana Property), which were first acquired by Hunter Development and later transferred to Larry

2

and Glenda. By the end of 2006, Todd had built a house on the 42-acre parcel and began living there with his family.

¶6      On May 1, 2007, Hunter Development executed and delivered a promissory note to Georgia State Bank in the principal amount of $1,600,000.00. The note was secured by certain real property located in Paulding County, Georgia, as well as Larry's personal guaranty. The note was to mature one year later on May 1, 2008.

¶7      On or about May 14, 2007, Larry and Glenda formed The R. Larry Hunter and Glenda Hunter Montana Revocable Trust (Trust) under the laws of the state of Georgia naming Glenda as Trustee. On June 7, 2007, Larry and Glenda conveyed the Montana Property through a quitclaim deed to Glenda as Trustee of the Trust (2007 Conveyance).[1] There is no indication that the conveyance to the Trust was supported by consideration.

¶8      On May 1, 2008, Hunter Development and Larry defaulted on their payment obligations to Georgia State Bank.[2] On May 29, 2008, the Trust entered into a purchase agreement with Todd, under which the Trust would sell the Montana Property to Todd for $588,000.00 to be paid off in monthly installments of $3,601.32. On or about July 3, 2008, the Trust conveyed the property to Todd through a warranty deed (2008 Conveyance). The record reflects that Todd made only one payment against the purchase price.

---

[1] According to the terms of the Trust, Glenda, as Trustee, was allowed to "pay the net income of this trust to Glenda Hunter, during her life." Upon death of Settlors Larry and Glenda, the Montana Property was to be divided among their children Todd, Luke Hunter, and Beth Hunter.

[2] According to the Amended Complaint, Georgia State Bank merged with RBC Bank. RBC Bank subsequently transferred and assigned the promissory note and loan agreement to Appellees, 623 Partners.

¶9   On August 10, 2009, Todd sold the 27-acre parcel to a third party for $230,000.00 and later wrote a check in the amount of $100,000.00 to the Trust, an amount which was later transferred from the Trust to Larry and Glenda for their personal use.

¶10  623 Partners filed suit on the Hunter Development indebtedness in the Superior Court of Paulding County, Georgia, and obtained a judgment against Hunter Development and Larry as guarantor in the amount of $1.2 million on June 27, 2011.

¶11  On April 6, 2011, 623 Partners filed this claim in the Nineteenth Judicial District Court, Lincoln County, Montana, seeking to set aside fraudulent transfers of the Montana Property, and recorded a *lis pendens* on the remaining 42-acre and 24-acre parcels in an effort to recover on its judgment.[3]

¶12  On February 8, 2012, Appellants moved for summary judgment, which the District Court denied.  623 Partners then moved for summary judgment.  On February 19, 2013, the District Court granted partial summary judgment in favor of 623 Partners.  The District Court held that the 2008 Conveyance violated § 31-2-334(2), MCA; the 2007 Conveyance was not a qualifying transfer as defined in § 31-2-328(12), MCA; the Montana Property (and specifically the 42-acre and 24-acre parcels) was subject to 623 Partners' writ of attachment for purposes of satisfying Appellee's judgment; and Todd was liable to 623 Partners for $230,000.00 in money damages equivalent to the amount of proceeds Todd received from the sale of the 27-acre parcel.  The District Court further ordered that Appellants were permanently enjoined from transferring or encumbering the Montana Property and that the Montana Property was to be sold by the Sheriff of Lincoln County.  Upon application

---

[3]  As noted, by this time the 27-acre parcel had been sold by Todd to a third party.

pending appeal, the District Court stayed the execution and sale of the Montana Property. Appellants now appeal.

¶13 We review a district court's ruling on a motion for summary judgment de novo, applying the criteria set forth in M. R. Civ. P. 56. *Dulaney v. State Farm Fire & Cas. Ins. Co.*, 2014 MT 127, ¶ 8, 375 Mont. 117, 324 P.3d 1211 (citation omitted). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Dulaney*, ¶ 8 (citing M. R. Civ. P. 56(c)(3)).

¶14 We first address Appellants' argument that the District Court erred in granting 623 Partners' motion for summary judgment on the fraudulent conveyance claim. We commence our discussion by observing that the two conveyances in question require separate analyses pursuant to two different statutory provisions. The conveyances are Larry and Glenda's June 7, 2007 conveyance of the Montana Property to the Trust (2007 Conveyance), and the Trust's subsequent conveyance of the Montana Property to Todd on or about July 3, 2008 (2008 Conveyance). Both conveyances are subject to review under the Uniform Fraudulent Transfer Act (UFTA), §§ 31-2-326 et seq, MCA.

*The District Court's Fraudulent Transfer Ruling*

¶15 In its Amended Judgment and Order of Sale dated December 4, 2013, the District Court found that the 2007 Conveyance "was not a qualifying transfer as defined in § 31-2-330(12), MCA [sic]" (the proper citation is § 31-2-328(12), MCA), but then went on

to conclude that it "was made in violation of § 31-32-334(2), MCA [sic]" (the proper citation is § 31-2-334(2), MCA) and is "void, set aside, and annulled."

¶16 We conclude that while the District Court ultimately reached the correct result, in doing so it transposed the statutory authority for the separate components of its decision. We therefore rephrase the findings and conclusions of the court as they pertain to the two transfers before us, citing the correct statutory authority. As this Court has stated, we will affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason. *See State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646. We start with the 2007 Conveyance from the Hunters to the Trust.

*The 2007 Conveyance*

¶17 As noted, Larry and Glenda created the Trust in May 2007 and conveyed the Montana Property to the Trust in June 2007. The District Court concluded that even if the transfer was intended as an estate planning tool, the conveyance of the property to the Trust by Larry and Glenda "was not a qualifying transfer" under § 31-2-328(12), MCA. That section provides:

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease, and creation of a lien or other encumbrance.

Section 31-2-328(12), MCA.

¶18 While the statute does not utilize the term "qualifying" when referencing a transfer, it appears from the context of the court's various orders that it determined that Larry and Glenda's transfer of the Montana Property to the Trust did not immunize the property from

6

the claims of creditors because the Trust was, by its specific terms, fully revocable. This being so, Larry and Glenda—as settlors—had the power to revoke the transfer at any time and regain full ownership of the property in their names. The court rejected Glenda's argument that the Trust was irrevocable, citing both the clear terms of the Trust document and the fact that the Trust proceeded to transfer the property to Todd in 2008, which would not have been feasible had the Trust truly been irrevocable.

¶19    We agree with the court's conclusion that the transfer of the Montana Property to the revocable Trust did not immunize the property from claims of creditors. *See e.g.*, *Gagan v. Gouyd*, 73 Cal. App. 4th 835, 842, 86 Cal. Rptr. 2d 733, 737 (Cal. App. 4th Dist. 1999), disapproved on other grounds in *Mejia v. Reed*, 31 Cal. 4th 657, 74 P.3d 166 n. 2 (Cal. 2003) (husband and wife's conveyance of property into a revocable trust did not render property unavailable to creditors as "[p]roperty in a revocable trust is subject to creditor claims to the extent of the debtor's power of revocation"); *see also Amonette v. Indymac Bank, F.S.B.*, 515 F. Supp. 2d 1176, 1184 (D. Haw. 2007) (because settlor of revocable trust "retains an unlimited right to revoke any conveyance to the revocable living trust, it has an unfettered ownership interest even though title is legally held by the trust"); *Florida Nat'l Bank v. Genova*, 460 So. 2d 895, 897 (Fla. 1984) ("when a settlor sets up a revocable trust, he or she has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property").

¶20    We now turn to the 2008 Conveyance which is the fraudulent transfer that is central to the District Court's Partial Summary Judgment Order.

*The 2008 Conveyance*

7

¶21    The District Court held that the 2008 Conveyance of real property from the Trust to Todd violated § 31-2-334(2), MCA. Under this provision, a transfer is deemed fraudulent as to a creditor whose claim arose before the transfer if:

> [T]he transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Section 31-2-334(2), MCA.

¶22    The District Court found that all three of the elements of § 31-2-334(2), MCA, were satisfied. 623 Partners' "claim" arose before the 2008 Conveyance; Glenda and Todd were insiders;[4] and Larry was insolvent when the transfer occurred in 2008. Finally, Todd, as an insider transferee, had reasonable cause to believe his father was insolvent.

¶23    We conclude the District Court did not err in this determination, as the record before us establishes no genuine issue of material fact. We therefore will not disturb the District Court's conclusion that the 2008 Conveyance violated § 31-2-334(2), MCA, and was therefore fraudulent.

*Montana Property Subject to Execution*

¶24    In light of the foregoing fraudulent transfer determination, the District Court held that the entirety of the Montana Property revested into the Trust and is now subject to execution by 623 Partners, after finding "[u]ndisputed evidence [that] link[ed] Glenda Hunter to the creation of the Trust and its later fraudulent maneuvers." The District Court found that Glenda's involvement in Hunter Development and her participation in both the 2007 and

---

[4] An "insider" includes, *inter alia*, "a relative of the debtor or of a general partner of the debtor." Section 31-2-328(7)(a)(i), MCA.

8

2008 Conveyances provided ample grounds for its judgment, and rejected her claim for an individual interest in the property that was fraudulently transferred. *See Cowan v. Cowan*, 2004 MT 97, ¶ 16, 321 Mont. 13, 89 P.3d 6 (courts "will not aid one who has caused title to his or her property to be transferred to another for the purpose of defrauding creditors"). We conclude that the District Court did not err in finding that the Montana Property was subject to execution.

*Money Damages Against Todd*

¶25    The District Court found as an undisputed fact that Todd sold one of the fraudulently transferred parcels for $230,000.00. Because the 27-acre parcel was sold to a third party, it is not recoverable. Under the UFTA, as noted by the District Court, a creditor, "subject to applicable principles of equity and in accordance with applicable rules of civil procedure," may obtain "any other relief the circumstances may require." Section 31-2-339(1)(c)(iii), MCA. Additionally, a court "may levy execution on the asset transferred or *its proceeds*." Section 31-2-339(2), MCA (emphasis added).

¶26    The District Court was clearly within its purview to levy execution on the proceeds of the sale of the fraudulently transferred 27-acre parcel and therefore, did not err in granting summary judgment against Todd in the amount of $230,000.00.

*Failure to Join Larry as a Party*

¶27    Appellants contend that the failure of 623 Partners to join Larry as an indispensable party under M. R. Civ. P. 19 warrants dismissal of the underlying claims.

¶28    When considering dismissal due to the absence of an indispensable party, a district court is "given discretion to determine whether the action will proceed or will be dismissed" and its decision is reviewed under the "abuse of discretion standard." *Mohl v. Johnson*, 275 Mont. 167, 169, 911 P.2d 217, 219 (1996) (internal citation omitted). This determination is "heavily influenced by the facts and circumstances of each case." *Mohl*, 275 Mont. at 171, 911 P.2d at 220. Under the circumstances of this case, we conclude that the District Court did not abuse its discretion in proceeding with the action without requiring joinder of Larry as a party, nor did it err in refusing to dismiss the claims of 623 Partners. We so conclude because Appellants have failed to specify in what respect the District Court abused its discretion with respect to joinder, and have failed to present a record on appeal adequate to sustain their burden of demonstrating reversible error.[5]

*Homestead Exemption*

¶29    Finally, Todd's claim that his homestead should be exempt from execution was unresolved by the District Court. Because the District Court has not ruled on this issue, this Court will not address Todd's argument regarding the applicability of the Homestead Exemption provided for in §§ 70-32-201 et seq, MCA.

---

[5] Because we find that the District Court did not abuse its discretion in proceeding when Larry was not a party, Appellants' statute of limitations argument need not be addressed.

**CONCLUSION**

¶30    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. It is incumbent upon the appellant to present a record sufficient to enable the court to rule on the issues raised. M. R. App. P. 8(2). The reason this is a memorandum opinion is that the Appellants failed to present a sufficient record to enable us to confirm the veracity of several facts that were arguably significant to the District Court's decision.

¶31    For the reasons set forth, we affirm the decision of the District Court that the 42-acre and 24-acre parcels are subject to 623 Partners' writ of attachment for purposes of satisfying Appellee's judgment and that Todd is liable to 623 Partners for $230,000.00 in money damages. We affirm and remand for further proceedings with respect to the homestead exemption issue.

/S/ PATRICIA COTTER

We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE