118 Cal.Rptr.2d 415 (2002)
97 Cal.App.4th 277
Rhina MEJIA, Plaintiff and Appellant,
v.
Danilo REED, et al., Defendants and Respondents.
No. H020771.
Court of Appeal, Sixth District.
March 29, 2002.
As Modified on Denial of Rehearing April 24, 2002.
Review Granted June 12, 2002.
*419 John H. Blake, San Jose, Hannig Law Firm LLP, for Plaintiff and Appellant.
Gary L. Olimpia, Helen E. Williams, San Jose, Olimpia, Whelan & Lively, for Defendants and Respondents.
WUNDERLICH, J.
In this appeal, we are called upon to decide whether a marital property division may be subject to fraudulent transfer law. Resolving that issue requires us to harmonize two independent statutory schemes, one that governs fraudulent transfers and another that controls property division on divorce.
After analyzing the relevant statutes and reviewing other persuasive authority, we conclude that a divorcing couple's property division may constitute a fraudulent transfer. In reaching that conclusion, we respectfully disagree with our colleagues in the Fourth District.[1]
We also determine that there are material fact questions concerning application of the governing statute in this case. We therefore reverse the trial court's grant of summary judgment.

FACTS AND PROCEDURAL HISTORY
Danilo Reed (Husband) and Violeta Reed (Wife), defendants below and respondents here, were married in 1970.
In 1994, Husband had an extramarital sexual relationship with appellant Rhina Mejia (Plaintiff). Plaintiff became pregnant as a result of that liaison. In August 1994, Plaintiff brought an action to establish Husband's paternity of the child that she was carrying. Plaintiff gave birth to a daughter in February 1995. Husband's paternity of the child was later established through genetic testing.
Thereafter, Husband was ordered to pay child support of $750 per month. On Plaintiffs motion, the court later increased child support retroactively to $1,153 per month.[2] As a result of the retroactivity of *420 the modification, Husband owed a support arrearage, which he paid in installments over time pursuant to an agreement with Plaintiff. Since then, Husband has remained current in his monthly child support obligation.
In May 1995less than a month after Husband was first ordered to pay child supportWife petitioned for dissolution of her 25-year marriage to Husband. The following day, Husband and Wife executed a Marital Settlement Agreement (MSA) in connection with the divorce action. Among other things, the M.S.A. § divided the parties' assets and debts. As part of the division of their marital property, Husband conveyed his interest in all of the couple's various real properties to Wife, while she conveyed her interest in Husband's medical practice to him. The M.S.A. § further provided that Husband would be solely responsible for his extramarital child support obligation. Spousal support was reserved. The M.S.A. § was merged into a judgment of dissolution, which was entered in August 1995.
By June 1997, Husband abandoned his medical practice. Apart from a car and a pension plan, Husband has no assets; he has little income and lives with his mother in San Francisco "on a shoestring."
In June 1997, Plaintiff recorded a lis pendens, which gave notice of the pendency of Plaintiffs paternity action against Husband, and which affected the real property awarded to Wife in the dissolution. Wife moved for leave to intervene in the paternity action in order to expunge the lis pendens. Plaintiff moved to join Wife as a party to the paternity action and sought to restrain her from transferring any of the real property.
The court heard the motions of Wife and Plaintiff in succession, then issued its findings and order. In that order, the court concluded that Wife's joinder in the paternity action was unwarranted because Husband was current in his support obligations. The court further determined that Plaintiff had no standing to challenge Husband's property transfer to Wife. Based on those determinations, the court denied Plaintiffs motion to join Wife and it granted Wife's motion to expunge the lis pendens. That order was entered in October 1997.
The following month, Plaintiff filed this action. In her first amended complaint, Plaintiff alleged that the marital property division, which was made pursuant to the MSA, was a fraudulent transfer by Husband to Wife that was intended to defraud, hinder, and delay Plaintiff in her collection of future child support. The complaint sought to set aside Husband's real property transfers to Wife.
In March 1998, Husband and Wife each answered Plaintiffs complaint with general denials and various affirmative defenses. Both Husband and Wife asserted the affirmative defense that the real property transfers were effectuated as part of the parties' dissolution judgment.
A year later, Husband made a defense summary judgment motion. Husband based his motion on the lack of evidence that he harbored any actual fraudulent intent and on proof that he received adequate consideration in the property division. In opposition to the motion, Plaintiff submitted evidence, in the form of expert opinion, that Husband did not receive reasonably equivalent value in exchange for his real property transfers to Wife and that the M.S.A. § rendered Husband insolvent. Neither party explicitly addressed the threshold question of the applicability *421 of fraudulent transfer law to the marital property division, nor did the trial court.[3]
After a hearing in July 1999, the court granted Husband's summary judgment motion. The court found that it was "undisputed that there was no actual intent to defraud" and further found that Husband was "not rendered insolvent" by the transfers. The court's stated reason for its insolvency ruling was that the future stream of child support payments, being an unmatured debt, could not be valued fairly for purposes of assessing solvency. The formal order granting Husband's summary judgment motion was entered on July 30, 1999.
Thereafter, the parties entered into a stipulation for entry of judgment, which was filed in September 1999.
This timely appeal by Plaintiff followed. In response to Plaintiffs opening brief on appeal, Husband filed a respondent's brief, in which Wife joined.

APPEALABILITY
Before turning to the merits of the controversy, we first address the threshold issue of whether the judgment is appealable "since the question of appealability goes to our jurisdiction .... [Citations.]" (Olson v. Cory (1983) 35 Cal.3d 390, 398, 197 Cal.Rptr. 843, 673 P.2d 720. Accord, Jennings v. Marralle (1994) 8 Cal.4th 121, 126, 32 Cal.Rptr.2d 275, 876 P.2d 1074.)
As a general proposition, a party may not appeal from a consent judgment. (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 399-400, 87 Cal.Rptr.2d 453, 981 P.2d 79.) "Parties cannot create by stipulation appellate jurisdiction where none otherwise exists." (Don Jose's Restaurant, Inc. v. Truck Ins. Exchange (1997) 53 Cal. App.4th 115, 118-119, 61 Cal.Rptr.2d 370, fn. omitted.) But there is an exception for cases in which consent was given solely "`to facilitate an appeal following adverse determination of a critical issue.'" (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 400, 87 Cal.Rptr.2d 453, 981 P.2d 79.) This is such a case. Here, it is apparent from the stipulated judgment that the parties did not intend "to settle their dispute fully and finally, but merely to hasten its transfer from the superior court to the Court of Appeal." (Id. at p. 401, 87 Cal. Rptr.2d 453, 981 P.2d 79.)
We therefore consider Plaintiffs appeal on its merits.

ISSUES
We first decide whether marital settlement agreements are subject to the UFTA. We then assess whether the record discloses a disputed material fact issue requiring a trial on Plaintiffs complaint.

DISCUSSION

I. Is a Division of Marital Property Subject to the UFTA?
To properly address the first question before us, we begin by setting forth the appropriate standard of review. We then examine the separate statutory schemes that govern marital property divisions and fraudulent transfers. Finally, we consider the interplay between the two statutes.

*422 A. Standard of Review.
"The issues in this appeal present questions of law involving statutory interpretation. As such, we are not bound by the trial court's decision and [we] conduct an independent review. [Citation.]" (County of Yolo v. Los Rios Community College Dist. (1992) 5 Cal.App.4th 1242, 1248, 7 Cal.Rptr.2d 647. Accord, Monastra v. Konica Business Machines, U.S.A., Inc. (1996) 43 Cal.App.4th 1628, 1635, 51 Cal.Rptr.2d 528; Dean v. Superior Court (1998) 62 Cal.App.4th 638, 641, 73 Cal. Rptr.2d 70.)

B. The Governing Statutes.
The UFTA permits defrauded creditors to reach property in the hands of a transferee. (See, Civ.Code, §§ 3439-3439.12.) The applicable provision of the Family Code protects property transferred to a spouse incident to divorce. (Fam.Code, § 916.) Neither statute explicitly refers to the other. Before attempting to harmonize the two statutory schemes, we review each in turn.

1. Uniform Fraudulent Transfer Act.
In 1986, California adopted the UFTA. (Stats.1986, ch. 383, § 2. See generally, 8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 460, pp. 459-461.) Like all common-law fraudulent transfer statutes, California law has its basis in the Statute of 13 Elizabeth. (In re Pajaro Dunes Rental Agency, Inc. (Bankr.N.D.Cal.1994) 174 B.R. 557, 571. See also UFTA 7A pt. II West's U. Laws Ann. (1999) Uniform Fraudulent Transfer Act, Prefatory Note, p. 268. And see Legislative Committee CommentAssembly 1986 Addition, 12A West's Ann.Civ.Code (1997 ed.) foll. § 3439.01, pp. 272-274.) "In the United States, state fraudulent conveyance law in the twentieth century has been expressed through the 1918 Uniform Fraudulent Conveyance Act (UFCA), ... and its successor, the 1984 Uniform Fraudulent Transfer Act (UFTA)." (In re Pajaro Dunes Rental Agency, Inc., supra, 174 B.R. at p. 572. See also, Wyzard v. Goller (1994) 23 Cal.App.4th 1183, 1188, 28 Cal.Rptr.2d 608.) California repealed the UFCA and enacted the UFTA in 1986. (In re Pajaro Dunes Rental Agency, Inc., supra, 174 B.R. at p. 572; 8 Witkin, Cal. Procedure, supra, Enforcement of Judgment, § 460, p. 460.) The UFTA carries forward many long-standing provisions of the prior law. (See, e.g., Reddy v. Gonzalez (1992) 8 Cal.App.4th 118, 122-123, 10 Cal.Rptr.2d 55; Civ.Code, § 3439.12.) There are a number of differences between the revised statute and its predecessor as well. (See 8 Witkin, Cal. Procedure, supra, Enforcement of Judgment, § 461, pp. 461-62.) But none of those differences affects our analysis here. California's version of the UFTA also varies from the uniform law in a number of respects. (See UFTA 7A pt. II West's U. Laws Ann., supra, Uniform Fraudulent Transfer Act, pp. 278, 297, 306, 331, 341, 355, 360 and UFTA 7A pt. II West's U. Laws Ann. (2001 supp.) Uniform Fraudulent Transfer Act, p. 38. See also, 8 Witkin, Cal. Procedure, supra, Enforcement of Judgment, § 460, p. 461.) Again, however, none of those variations affects this case.
The UFTA proscribes fraudulent conveyances. "A fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." (Yaesu Electronics Corp. v. Tamura (1994) 28 Cal. App.4th 8, 13, 33 Cal.Rptr.2d 283.) The purpose of the statute is "`to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach ....'" (Chichester v. Mason. *423 (1941) 43 Cal.App.2d 577, 584, 111 P.2d 362 [construing predecessor statute]; accord, Fross v. Wotton. (1935) 3 Cal.2d 384, 390, 44 P.2d 350.) "This Act, like its predecessor and the Statute of 13 Elizabeth, declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims." (Legislative Committee CommentAssembly 1986 Addition, 12A West's Ann.Civ.Code, supra, foll § 3439.01, p. 272.)
Under the UFTA, a transfer is fraudulent, as to both present and future creditors, if it is made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (Civ.Code, § 3439.04, subd. (a).)[4] Such transfers are sometimes referred to as "fraudulent in fact." (See, e.g., Scholes v. Lehmann (7th Cir.1995) 56 F.3d 750, 756-757. See generally, 8 Witkin, Cal. Procedure, supra, Enforcement of Judgment, § 467, pp. 465-466.)
Even in the absence of actual fraudulent intent, a transfer may be fraudulent as to present creditors if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." (Civ.Code, § 3439.05.)[5] Such constructively fraudulent transfers are sometimes called "fraudulent in law." (Scholes v. Lehmann, supra, 56 F.3d at pp. 756-757. See generally, 8 Witkin, Cal. Procedure, supra, Enforcement of Judgment, § 468, pp. 466-467.)
Defrauded creditors may set aside transfers that are either actually or constructively fraudulent, (Civ.Code, § 3439.07, subd. (a)(1); Monastra v. Konica Business Machines, U.S.A., Inc., supra, 43 Cal.App.4th at pp. 1635-1636, 51 Cal. Rptr.2d 528; Reddy v. Gonzalez, supra, 8 Cal.App.4th at p. 122, 10 Cal.Rptr.2d 55; In re Cohen (9th Cir.BAP (Cal.) 1996) 199 B.R. 709, 715-716.) "Fraud, in the sense of morally culpable conduct, need not be present in either category of fraudulent transfer." (In re Cohen, supra, 199 B.R. at p. 716.)
On its face, the UFTA expansively applies to all transfers, with no explicit exception *424 for transfers incident to a divorce. (See, Civ.Code, § 3439.01, subd. (i).)[6]

2. The Family Code.
The Family Code was enacted in 1992, operative January 1, 1994. (Stats.1992, ch. 162, § 10.) The Family Code collected and reorganized the major family law statutes, which had been scattered in various codes.[7] (1994 Family Code with Official Comments (Nov.1993) 23 Cal. Law Revision Com. Rep. (1993) p. 10.) "Consistent with its legislative directive, the Commission did not attempt to make major substantive revisions in the law." (Ibid.) The Family Code thus continues the substance of the prior Family Law Act, codified at former Civil Code sections 4000-5317, which dealt with marriage, dissolution, custody, support, property rights during marriage, marital agreements, and property division. (1994 Family Code with Official Comments (Nov.1993) 23 Cal. Law Revision Com. Rep., supra, p. 11, fn. 11.)
A decade before the Family Code became effective, the Legislature overhauled the law governing the liability of marital property on divorce when it enacted the Family Law Act. (See former Civil Code sections 5120.010-5120.330, Stats. 1984, ch. 1671, § 9; see now, Family Code sections 900-1000. See, Recommendation Relating to Liability of Marital Property for Debts (Jan.1983) 17 Cal. Law Revision Com. Rep. 1 (1984) pp. 23-24.) "In 1984 the Legislature materially altered the postmarital liability of spouses. The Legislature determined that, under most circumstances, after a marriage has ended, it is unwise to continue the liability of spouses for community debts incurred by former spouses." (Dawes v. Rich (1997) 60 Cal.App.4th 24, 30, 70 Cal.Rptr.2d 72.) Consistent with that view, the Legislature enacted former Civil Code section 5120.160. (Stats.1984, ch. 1671, § 9.) Under that statute, property received in a divorce was not liable for debts of the recipient's spouse, unless the recipient was assigned the debt or there was a lien on the property. (Former Civil Code section 5120.160, subd. (a)(2), Stats.1984, ch. 1671, § 9.) When it first limited the post-divorce liability of marital property in 1984, the Legislature reversed more than a century of law. (Dawes v. Rich, supra, 60 Cal. App.4th at p. 28, 70 Cal.Rptr.2d 72.) But the Legislature did not act in derogation of creditors' rights in adopting former Civil Code section 5120.160.[8] To the contrary, *425 "[w]hen the Legislature enacted that statute, it was contemplated that `[i]n allocating the debts to the parties, the court in the dissolution proceeding should take into account the rights of creditors so there will be available sufficient property to satisfy the debt by the person to whom the debt is assigned, provided the net division is equal.'" (Lezine v. Security Pacific Fin. Services, Inc. (1996) 14 Cal.4th 56, 75, 58 Cal.Rptr.2d 76, 925 P.2d 1002, quoting Recommendation Relating to Liability of Marital Property for Debts (Jan.1983) 17 Cal. Law Revision Com. Rep. 1, supra, pp. 23-24, fn. omitted.) "In 1992 former Civil Code section 5120.160 was reenacted without substantive change as Family Code section 916." (Dawes v. Rich, supra, 60 Cal.App.4th at p. 30, 70 Cal.Rptr.2d 72. See also, In re Marriage of Braendle (1996) 46 Cal.App.4th 1037, 1042, fn. 5, 54 Cal.Rptr.2d 397.)
Thus, pursuant to statutes in place since 1984, property received upon dissolution of marriage generally is not liable for debts incurred by the recipient's ex-spouse. (Fam.Code, § 916, subd. (a)(2).)[9] The *426 statute makes two explicit exceptions to the general rule of non-liability. First, property awarded to the non-debtor spouse is liable for debts assigned to the recipient. (Ibid.) Second, property remains liable after division for the satisfaction of a pre-existing lien on that property. (Ibid. See also, Lezine v. Security Pacific Fin. Services, Inc., supra, 14 Cal.4th 56, 58 Cal.Rptr.2d 76, 925 P.2d 1002.) Family Code section 916 does not explicitly except fraudulent transfers from its operation.
In this case, under the relevant Family Code provisions, the property awarded to Wife on dissolution would not be liable for Husband's child support obligation. That obligation is treated as a premarital debt incurred by Husband, which was properly confirmed to him on dissolution. (See Fam.Code, §§ 915, 2621.) Under the general rule of non-liability, Wife's share of the community property received in the divorce is not liable for Husband's premarital debt. (Fam.Code, § 916, subd. (a)(2).) And neither of the two statutory exceptions to the general rule applies here: Husband's child support obligation was not assigned to Wife, nor did it create a preexisting lien on the community property. (Ibid.)
Based solely on the applicable Family Code provision, then, the property awarded to Wife in the divorce would not be liable for Husband's extramarital child support obligation.

C. Interplay Between the Statutes.
As noted above, the UFTA nominally applies to all transfers, making no express exception for transfers incident to a divorce. (See, Civ.Code, § 3439.01, subd. (i); see also, Civ.Code, § 3439.04.) But the Family Code provision that protects property in the hands of an ex-spouse appears equally absolute on its face and makes no explicit reference to fraudulent transfers. (Fam.Code, § 916.) Therefore, in order to determine the statutes' proper relationship to each other, and to resolve the question of whether marital property divisions may constitute fraudulent transfers, we must look beyond the four corners of the two statutes.

1. Statutory Construction.
We begin our analysis with familiar rules of statutory construction. "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1386, 241 Cal.Rptr. 67, 743 P.2d 1323.) In determining legislative intent, we first look to the statutory language itself. (Ibid.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (Id. at p. 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) Thus, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (Moore v. Panish (1982) 32 Cal.3d 535, 541, 186 Cal.Rptr. 475, 652 P.2d 32. See also, United Farm Workers of America v. Agricultural Labor Relations Bd. *427 (1995) 41 Cal.App.4th 303, 314, 48 Cal. Rptr.2d 696; County of Yolo v. Los Rios Community College Dist, supra, 5 Cal. App.4th at p. 1251, 7 Cal.Rptr.2d 647.) "In construing a statute, all acts relating to the same subject matter should be read together as if one law and harmonized if possible, even though they may have been passed at different times,[10] and regardless of the fact that one of them may deal specifically and in greater detail with a particular subject while the other may not. [Citations.]" (In re Marriage of Williams (1989) 213 Cal.App.3d 1239, 1245, 262 Cal. Rptr. 317.) "Where as here two codes are to be construed, they `must be regarded as blending into each other and forming a single statute.' [Citation.] Accordingly, they `must be read together and so construed as to give effect, when possible, to all the provisions thereof.' [Citation.]" (Tripp v. Swoap (1976) 17 Cal.3d 671, 679, 131 Cal.Rptr. 789, 552 P.2d 749 overruled on another point in Frink v. Prod (1982) 31 Cal.3d 166, 180, 181 Cal.Rptr. 893, 643 P.2d 476.)
Applying the above principles, we start with the language of the two statutes.
As noted above, the UFTA uses expansive language, defining transfers to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset ...." (Civ.Code, § 3439.01, subd. (i).) The UFTA expressly excepts from its operation only certain transfers that result from lease terminations or non-collusive lien enforcement. (Civ.Code, § 3439.08, subd. (e).) There are no explicit exceptions for transfers incident to a divorce. Furthermore, the UFTA "provides that, unless otherwise expressly provided by statute, other laws of whatever kind which apply to transactions also covered by the Fraudulent Transfer Act supplement that act and do not supplant or supersede it." (Monastra v. Konica Business Machines, U.S.A., Inc., supra, 43 Cal.App.4th at p. 1639, 51 Cal. Rptr.2d 528, original italics, citing Civ. Code, § 3439.10.) An expansive reading is consistent with the purpose of the law to protect creditors. (Chichester v. Mason, supra, 43 Cal.App.2d at p. 584, 111 P.2d 362.)
By contrast, the language of Family Code section 916 is more circumscribed. For one thing, Family Code section 916 explicitly overrides only the provisions of the chapter in which it is contained.[11] That proviso suggests a confined reach for Family Code section 916 vis-à-vis other laws. For another thing, although the *428 statute generally prohibits a creditor's resort to property received in a divorce, it provides for reimbursement from the debtor spouse in the event that the creditor in fact reaches the property. (Fam.Code, § 916, subd. (b). See also, Fam.Code, § 920. See generally, Recommendation Relating to Liability of Marital Property for Debt (Jan.1983) 17 Cal. Law Revision Com. Rep. 1, supra, pp. 15-17, 22.) The reimbursement provision furthers one of the statute's purposes, which is to divide property and debts equitably as between the divorcing spouses. (See, e.g., In re Marriage of Williams, supra, 213 Cal. App.3d at p. 1246, 262 Cal.Rptr. 317. And see Fam.Code, § 1500 et seq.) To some extent, the statute's emphasis on relations between the spouses at least suggests a limited reach outside the marital context.
We next consider the two statutes with reference to the whole system of law of which each is a part.
The UFTA must be construed as part of a uniform system of law. (Civ. Code, § 3439.11; Cortez v. Vogt (1997) 52 Cal.App.4th 917, 934, 937, 60 Cal.Rptr.2d 841.) "Thus, in interpreting and construing the act, it is appropriate to consult the decisions of other jurisdictions in which the act has been adopted." (16 Cal.Jur.3d (1983) Creditors' Rights and Remedies, § 325, p. 439, fn. omitted, citing Neumeyer v. Crown Funding Corp. (1976) 56 Cal. App.3d 178, 187, 128 Cal.Rptr. 366 [disapproved on other grounds in Liodas v. Sahadi (1977) 19 Cal.3d 278, 287, fn. 3, 137 Cal.Rptr. 635, 562 P.2d 316]. See also, 37 C.J.S. (1997) Fraudulent Conveyances, § 6, fn. 50, p. 542.) A number of jurisdictions with identical or substantially similar versions of the UFTA have concluded that a property division incident to a divorce can constitute a fraudulent conveyance under the UFTA. (See, e.g., Dowell v. Dennis (Okla.Civ.App. Div. 3, 2000) 998 P.2d 206, 209, 212-213 [creditor may collaterally attack a divorce decree as a fraudulent transfer under the UFTA; summary judgment for former wife and husband reversed]; Greeninger v. Cromwell (1996) 140 Or.App. 241, 915 P.2d 479, 482 [division of marital property on divorce subject to UFTA; summary judgment for tortfeasor husband and his former wife reversed]; Kardynalski v. Fisher (1985) 135 Ill. App.3d 643, 90 Ill.Dec. 410, 482 N.E.2d 117, 121-122 [judgment for former wife reversed]; Scholes v. Lehmann, supra, 56 F.3d at pp. 758-759 [ex-husband's transfer fraudulent]; In re Pilavis (Bankr.D.Mass. 1999) 233 B.R. 1, 10-11 [property division subject to UFTA, absent arms-length bargaining and adequate consideration]. Cf., Federal Deposit Ins. Co. v. Malin (2nd Cir.1986) 802 F.2d 12, 18 [under New York law, separation agreement was a conveyance, but ex-wife was a good-faith purchaser for fair consideration]; Atlantic Bank of New York v. Toscanini (2 Dept. 1988) 145 A.D.2d 590, 536 N.Y.S.2d 132, 133 [same]; Road Runner Inn, Inc. v. Merrill (Utah 1980) 605 P.2d 776, 777-778 [under particular circumstances, property division was not a fraudulent transfer]. But compare, Britt v. Damson (9th Cir.1964) 334 F.2d 896, 901 [federal court, construing Washington law, noted the absence of any state court decision setting aside property division as a fraudulent transfer]; Witbart v. Witbart (1983) 204 Mont. 446, 666 P.2d 1217, 1219, after remand 216 Mont. 178, 701 P.2d 339 [without discussing UFTA, state appellate court held that a separation agreement was not a conveyance].) The interpretation given this uniform law in other jurisdictions thus suggests that the UFTA's reach properly extends to marital property divisions.
We next consider Family Code section 916 with reference to the system of law of which it is a part. Broadly speaking, *429 Family Code section 916 is part of community property law in California. Our state's community property system generally promotes the "maximum protection of creditors' rights with minimum procedural burdens," at least during marriage. (Recommendation Relating to Liability of Marital Property for Debts (Jan.1983) 17 Cal. Law Revision Com. Rep. 1, supra, p. 11; see also, id. at pp. 9-10.) More narrowly, section 916 is contained in Division 4 of the Family Code, which governs rights and obligations while married. The overall focus of that division is on the legal relationship between spouses, not on their relationships with third parties.[12] That focus suggests a more circumscribed application of section 916 outside the marital relationship.
After applying the primary rules of statutory construction, it appears that the Legislature intended an expansive reading of the UFTA and a more confined reach for Family Code section 916. But we are not satisfied that the primary principles of statutory construction conclusively resolve the question before us.
We therefore turn to secondary rules of interpretation, with resort to extrinsic aids, such as legislative history and, where appropriate, to the use of intrinsic aids, such as maxims, as guides to construction. (See, Texas Commerce Bank v. Garamendi (1992) 11 Cal.App.4th 460, 471, 474, 14 Cal.Rptr.2d 854. See generally, 2A Singer, Sutherland Statutes and Statutory Construction (6th ed. 2000) Criteria of Interpretation § 45:14, pp. 109-110.) One such maxim is expressio unis est exclusio alterius: "The expression of some things in a statute necessarily means the exclusion of other things not expressed." (Gikas v. Zolin (1993) 6 Cal.4th 841, 852, 25 Cal.Rptr.2d 500, 863 P.2d 745, citing Dyna-Med, Inc. v. Fair Employment & Housing Com., supra, 43 Cal.3d 1379, 1391, fn. 13, 241 Cal.Rptr. 67, 743 P.2d 1323. See generally, In re Christopher T. (1998) 60 Cal.App.4th 1282, 1290;, 71 Cal.Rptr.2d 116, 2A Singer, Sutherland Statutes and Statutory Construction, supra, Intrinsic Aids §§ 47:23-47:25, pp. 304-333.) In the Family Code, the Legislature expressly referred to fraudulent transfer law in connection with transmutations, while it was silent concerning application of the UFTA to marital property divisions on divorce. (Compare Fam.Code, §§ 851 and 916.) But we are not persuaded that the express reference to the UFTA in one section of the Family Code necessarily implies its exclusion in a subsequent section. (Cf., Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist. (2001) 90 Cal. App.4th 64, 108 Cal.Rptr.2d 715 [prejudgment interest against public entity allowed under both subdivisions of Civil Code section 3287, even though only subdivision (a) expressly permits such an award]. And cf., Dean v. Superior Court, supra, 62 Cal.App.4th at pp. 641-642, 73 Cal.Rptr.2d 70 [section 13307 of the Elections Code, which governs local elections, impliedly limits candidate's comments about opponent, while section 13308, governing judicial elections, does so expressly].) The maxim "is no magical incantation, nor does it refer to an immutable rule." (Estate of *430 Banerjee (1978) 21 Cal.3d 527, 539, 147 Cal.Rptr. 157, 580 P.2d 657.) Furthermore, this particular canon of construction typically is applied to statutes that enumerate particular inclusions or exceptions, with the effect that unlisted items are excluded. (See, e.g., People v. Reed (1996) 13 Cal.4th 217, 226-228, 52 Cal.Rptr.2d 106, 914 P.2d 184; Estate of Banerjee, supra, 21 Cal.3d at p. 539, fn. 10, 147 Cal.Rptr. 157, 580 P.2d 657; Dean v. Superior Court, supra, 62 Cal.App.4th at p. 641, 73 Cal.Rptr.2d 70; United Farm Workers of America v. Agricultural Labor Relations Bd., supra, 41 Cal.App.4th at p. 316, 48 Cal.Rptr.2d 696.) There is no statutory enumeration in this case. Nor is there any manifest reason to imply exclusion here. In short, this is not a proper case for application of the maxim expressio unis est exclusio alterius as an aid to construction. Nor do any other intrinsic aids assist us in construing the statutes at issue here. (See generally, 2A Singer, Sutherland Statutes and Statutory Construction, supra, Intrinsic Aids, ch. 47, pp. 207-05.)
With no assistance from intrinsic aids to statutory construction, we look to the legislative history of the statutes. (See, e.g., Texas Commerce Bank v. Garamendi, supra, 11 Cal.App.4th at p. 474, 14 Cal.Rptr.2d 854; Halbert's Lumber, Inc. v. Lucky Stores, Inc. (1992) 6 Cal. App.4th 1233, 1239, 8 Cal.Rptr.2d 298. See generally, 2A Singer, Sutherland Statutes and Statutory Construction, supra, Extrinsic AidsLegislative History, ch. 48, pp. 407-489.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (Dyna-Med, Inc. v. Fair Employment & Housing Com., supra, 43 Cal.3d at p. 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) In examining the legislative history of the UFTA, we look both to our state's enactment of the law and to the uniform act itself. Prior to our state's adoption of the UFTA, the California State Bar weighed in on the proposed law. (See, Margaret Sheneman, The State Bar of California (Business Law Section) mem. to Judith Harper, Legislative Representative on Sen. Bill No. 2150 Uniform Fraudulent Transfer Act, April 30, 1986 [State Bar Report].) Addressing policy considerations, the State Bar Report said: "Serious consideration needs to be given to the effect of this statute in areas such as leveraged buyouts of businesses, marital property agreements, and foreclosure sales of real property,[13] to name a few examples." (Id. at p. 2, 241 Cal.Rptr. 67, 743 P.2d 1323; italics added.) No legislative action was taken to exclude such transfers, however.[14] As for the uniform law, the official comment to section 6 mentions various examples of transfers that may be subject to the Act, even though they are not amenable to perfection.[15] (UFTA 7A pt. II *431 West's U. Laws Ann., supra, Uniform Fraudulent Transfer Act, § 6, Comment, p. 337.) Those examples include the "execution of a marital or premarital agreement for the disposition of property owned by the parties to the agreement ...." (Ibid.; emphasis added.) The history of the UFTA thus suggests that the Legislature was aware of its possible application to marital property agreements but took no action to avoid that possibility. By contrast, the history of the Family Code is generally silent regarding fraudulent transfer law, simply continuing the provision making transmutations subject to the UFTA.[16] Furthermore, there were no conforming amendments to the UFTA when the Family Code was enacted, although other statutes were amended to conform to the new code.[17] (See 8 Witkin, Cal. Procedure, supra, Enforcement of Judgment, § 460, pp. 460-461.)
Taken together, the history of the two statutes suggests that the UFTA was intended to extend to marital property divisions. But however suggestive of intent the statutes' legislative histories may be, they are not dispositive of that question. Therefore, we cautiously take the third and final step in statutory construction and "apply reason, practicality, and common sense to the language at hand." (Halbert's Lumber, Inc. v. Lucky Stores, Inc., supra, 6 Cal.App.4th at p. 1239, 8 Cal.Rptr.2d 298.) "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. *432 [Citation.]" (Dyna-Med, Inc. v. Fair Employment & Housing Com., supra, 43 Cal.3d at p. 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) This step in statutory interpretation requires us to analyze the policy considerations at issue here.
A number of important policies come into play here, some of which are in direct opposition to each other. For example, the policy of protecting defrauded creditors collides with the countervailing policy of protecting innocent ex-spouses. A second set of contravening policy considerations is also present here, which may be summarized as finality versus fairness. Thus, the policy of giving effect to a divorcing couple's hard-won property agreement, and of assuring the finality of a judgment based on that agreement, must be balanced against the countervailing goal of deterring misconduct. In examining this second set of competing policies, we observe that marital property divisions may be set aside in various other circumstances, including state law actions between spouses and federal bankruptcy proceedings.

2. Setting Aside Property Divisions: Actions Between Spouses.
At the outset, we acknowledge that marital property agreements have long been favored under the law. "Property settlement agreements occupy a favored position in the law of this state and are sanctioned by the Civil Code.[18] [Citations.] Such agreements are usually made with the advice of counsel after careful negotiations, and the courts, in accord with legislative sanction, prefer agreement rather than litigation. [Citation.] When the parties have finally agreed upon the division of their property, the courts are loath to disturb their agreement except for equitable considerations. A property settlement agreement, therefore, that is not tainted by fraud or compulsion or is not in violation of the confidential relationship of the parties is valid and binding on the court. [Citations.]" (Adams v. Adams (1947) 29 Cal.2d 621, 624, 177 P.2d 265, italics added.)
Despite their favored position in the law, marital settlement agreements that have not been merged into a judgment may be set aside on traditional contract law grounds. (In re Marriage of Egedi (2001) 88 Cal.App.4th 17, 22, 105 Cal.Rptr.2d 518. See also, Fam.Code, § 2128, subd. (b).) In addition, such agreements may be vacated if they are inequitable. (In re Marriage of Egedi, supra, 88 Cal.App.4th at p. 22, 105 Cal. Rptr.2d 518.)
Even where a marital settlement agreement has been merged into the dissolution judgment, as in this case, the resulting property division still may be set aside in an action by the defrauded spouse. (See, Fam.Code, § 2122, subd. (a) [actual fraud as a ground for setting aside the judgment]; Rubenstein v. Rubenstein (2000) 81 Cal.App.4th 1131, 97 Cal.Rptr.2d 707; In re Marriage of Stevenot (1984) 154 Cal. App.3d 1051, 1071, 202 Cal.Rptr. 116. Cf., In re Marriage of Braendle, supra, 46 Cal.App.4th at p. 1043, 54 Cal.Rptr.2d 397 [only a spouse may bring an action under Family Code section 2556 to adjudicate an omitted community asset or liability].) In addition to fraud, the Legislature has enumerated other statutory grounds for vacating a dissolution judgment. (See Fam. Code, §§ 2122 subds. (b)(e), 2125.) The Legislature made clear its reasons for doing so: "The public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring *433 sufficient support awards, and in deterring misconduct." (Fam.Code, § 2120, subd. (c).)
Thus, under state statutory law, a marital property division may be set aside if it is fraudulent or otherwise invalid as between the divorced spouses.
Moreover, even in situations where the property division is valid as between the parties, it may be challenged by affected third parties in some circumstances. (See, e.g., McGee v. Allen (1936) 7 Cal.2d 468, 476, 60 P.2d 1026.) One such circumstance is bankruptcy.

3. Setting Aside Property Divisions: Bankruptcy Proceedings.
Bankruptcy proceedings are particularly relevant to our analysis because of the close interrelationship between applicable provisions of the Bankruptcy Code and the UFTA. (See UFTA 7A pt. II West's U. Laws Ann., supra, Uniform Fraudulent Transfer Act, Prefatory Note, p. 268. See also, Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2150 (1985-1986 Reg. Sess.) as amended May 8, 1986, p. 2; Assem.3d reading analysis of Sen. Bill No. 2150 as amended July 7, 1986, p. 3. See also, 37 C.J.S., supra, Fraudulent Conveyances, § 6, fn. 49, p. 542.) In the first place, the UFTA's "definition of `transfer' is derived principally from Section 101(48) of the Bankruptcy Code." (Legislative Committee CommentAssembly 1986 Addition, par. (9), 12A West's Ann.Civ.Code, supra, foll. § 3439.01, p. 274 [see now section 101(54) of the Bankruptcy Code, 11 U.S.C § 548].) Furthermore, there are significant parallels between fraudulent transfer analysis in bankruptcy proceedings and in UFTA actions.[19] (In re United Energy Corp. (9th Cir.1991) 944 F.2d 589, 594; In re Maddalena (Bankr.C.D.Cal.1995) 176 B.R. 551, 553; In re Pajaro Dunes Rental Agency, Inc., supra, 174 B.R. at p. 572.) Of particular importance in this case is section 548 of the Bankruptcy Code, which permits the trustee to avoid fraudulent transfers.[20] "Findings made under § 548 of the (Bankruptcy) Code are applicable to actions brought under the UFTA, because the provisions parallel each other." (In re Crystal Medical Products, Inc. (Bankr. N.D.Ill.1999) 240 B.R. 290, 299-300. See also In re Gillissie (Bankr.N.D.Ill.1997) 215 B.R. 370, 374.)
Significantly, marital property divisions are vulnerable to set-aside as fraudulent transfers in bankruptcy proceedings. For purposes of bankruptcy law, "it is now well *434 settled that a transfer of property pursuant to a collusive divorce decree or property settlement intended to hinder, delay or defraud creditors (or pursuant to a divorce decree or property settlement for inadequate consideration, leaving the debtor insolvent) constitutes a `transfer' as defined under § 101(54) of the Bankruptcy Code." (In re Hope (Bankr.D.Dist.Col.1999) 231 B.R. 403, 415, fn. omitted. See also, cases cited therein, id. at p. 415, fn. 19.) This is true notwithstanding judicial recognition of the inherent conflict between commercial law and family law concepts. (See, In re Sorlucco (Bankr.D.N.H.1986) 68 B.R. 748, 753, acknowledging "the dilemma of trying to apply fraudulent transfer concepts normally applied in commercial settings ... to the noncommercial context of a divorce proceeding.")
Under federal bankruptcy law, then, a marital property division may be set aside as a fraudulent transfer.

4. Setting Aside Property Divisions: Applicability of UFTA.
Although marital property agreements and judgments may be vacated for the benefit of bankruptcy creditors or defrauded spouses, the question remains whether they may be set aside for the benefit of nonbankruptcy creditors as a fraudulent transfer under state law. To answer that question, we look to California case law for guidance, starting with decisions involving transfers during marriage.

a. Property Transfers Made During Marriage.
A longstanding and unbroken line of California cases holds that property transfers between spouses, if made during marriage, may be subject to set-aside under the UFTA and its predecessor statutes. (See, e.g., Frankel v. Boyd (1895) 106 Cal. 608, 614, 39 P. 939; Reddy v. Gonzalez, supra, 8 Cal.App.4th 118, 10 Cal.Rptr.2d 55.)
Spouses may transfer property during marriage by transmutation. "A transmutation is an interspousal transaction or agreement that works a change in the character of the property. [Citation.]" (In re Marriage of Campbell (1999) 74 Cal.App.4th 1058, 1062, 88 Cal.Rptr.2d 580. Accord, In re Marriage of Haines (1995) 33 Cal.App.4th 277, 293, 39 Cal.Rptr.2d 673. See, Fam.Code, § 850 [married persons may transmute the character of their property by agreement or transfer].) By statute, transmutations are "subject to the laws governing fraudulent transfers." (Fam.Code, § 851. See also, Reddy v. Gonzalez, supra, 8 Cal.App.4th 118, 10 Cal. Rptr.2d 55; Sanwa Bank v. Chang (2001) 87 Cal.App.4th 1314, 105 Cal.Rptr.2d 330; State Bd. of Equalization v. Woo (2000) 82 Cal.App.4th 481, 484, 98 Cal.Rptr.2d 206.)
Plaintiff argues that marital property transmutations may occur incident to dissolution. We disagree. The statute recognizes transmutations by "married persons." (Fam.Code, § 850.) We acknowledge that the statutory definition of "married persons" may include "persons who were previously lawfully married to each other, as is appropriate under the circumstances of the particular case." (Fam.Code, § 11.) Despite that, case law in this area clearly implies that transmutations occur only during an ongoing marriage. (See, Tompkins v. Bishop (1949) 94 Cal.App.2d 546, 550, 211 P.2d 14 [spouses may transmute property during the marriage]. Cf., In re Marriage of Campbell, supra, 74 Cal. App.4th at p. 1061, 88 Cal.Rptr.2d 580 [transmutations may be made before or during marriage]; and see Fam.Code, § 1500 [statutory marital property rights may be altered by a premarital or marital agreement]; Fam.Code, § 1613 [premarital *435 agreement effective upon marriage].) The same inference may be drawn from expert family law commentary on the subject. (See generally, Hogoboom & King, Cal. Practice Guide: Family Law 2 (The Rutter Group 2001) ¶ 9:3, p. 9-1: Marital agreements are those "executed by husband and wife during marriage and affecting marital rights and obligations incident to an ongoing marriage .... [¶] This is a broad category, encompassing, among other things, `transmutation' agreements altering property status ....")
At oral argument, Plaintiff conceded that transmutations are generally understood to occur in ongoing marriages, but argued that there is "no reason" a transmutation cannot occur upon dissolution. Again, we disagree. In doing so, we recognize at least one key distinction between transmutations during marriage and the division of marital property incident to divorce. An agreement to transmute property may be made without consideration. (Fam.Code, § 850.) By contrast, as a general rule, agreements dividing marital property on divorce must be supported by consideration.[21] (See, Hogoboom & King, Cal. Practice Guide: Family Law 2, supra, ¶ 9:363, p. 9-77. See also Fam.Code, § 2550, which generally requires an equal division of the community estate.) That distinction lends strength to the common understanding of transmutations as occurring in an ongoing marriage. The Legislature's placement of the provisions on transmutation in the division of the Family Code entitled "Rights and Obligations During Marriage" further bolsters that inference.
For the foregoing reasons, we conclude that property divisions incident to divorce do not constitute transmutations. Thus, the unassailable fact that a statute expressly subjects transmutations to fraudulent transfer laws does not definitively resolve the question whether marital property divisions on divorce are likewise subject to the UFTA.

b. Division of Marital Property on Divorce.
The opinions in a number of older California cases support the proposition that a divorcing couple's property division may constitute a fraudulent transfer. (See, e.g., McKnight v. Superior Court (1985) 170 Cal.App.3d 291, 295-296, 299, 215 Cal. Rptr. 909 [award of property to wife on divorce may be set aside as fraudulent transfer]; McKnight v. Faber (1986) 185 Cal.App.3d 639, 646-647, 652, 230 Cal. Rptr. 57 disapproved on another point in Silberg v. Anderson (1990) 50 Cal.3d 205, 212-213, 266 Cal.Rptr. 638, 786 P.2d 365 [later appeal in same case; summary judgment for wife reversed]; Nicolos v. Grover (1986) 186 Cal.App.3d 858, 861, 231 Cal. Rptr. 79 [divorcing couple's property division successfully challenged as fraudulent conveyance by husband's bankruptcy trustee]; Costello v. Poole (1963) 217 Cal. App.2d 556, 558, 559-560, 31 Cal.Rptr. 755 [bankruptcy trustee successfully sued to set aside property settlement under California *436 law]; In re Chappel (S.D.Cal.1965) 243 F.Supp. 417, 418, 420 [transfer incident to divorce challenged under both bankruptcy code and California law]; Stearns v. Los Angeles City School Dist. (1966) 244 Cal.App.2d 696, 704, 738, 53 Cal.Rptr. 482 [executory agreement to convey to ex-wife may constitute fraudulent conveyance]. Cf., Carman v. Athearn (1947) 77 Cal.App.2d 585, 598, 175 P.2d 926 [no set-aside where defrauded wife reconveyed property on divorce]; Stevenson v. Stevenson (1940) 36 Cal.App.2d 494, 502, 503, 97 P.2d 982 [no set-aside in favor of divorcing husband who conveyed property to wife to keep it out of reach of potential tort creditor].) We note, however, that those decisions all predate the adoption of Family Code section 916 and its predecessor.[22] Thus, at the time the foregoing decisions were rendered, creditors were permitted to reach property in the hands of the non-debtor spouse. Under the current family law statute, that is no longer the case. For that reason, we question the precedential value of these older opinions in resolving the issue before us.
Since the adoption of Family Code section 916 and its predecessor, only one California case has squarely addressed the issue of whether marital property divisions are subject to fraudulent transfer law.[23] That case is Gagan v. Gouyd, supra, 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733.
In Gagan, the Fourth District Court of Appeal held that "a transfer of assets provided in a marital settlement agreement is not a fraudulent conveyance." (Gagan v. Gouyd, supra, 73 Cal.App.4th at p. 838, 86 Cal.Rptr.2d 733.) The court based its determination on several factors. As pertinent here,[24] the court first noted the apparent lack of case law support for the proposition that property transfers incident to divorce are subject to fraudulent transfer laws. (Id., at p. 842, 86 Cal. Rptr.2d 733.) The court next observed that the debt, apparently "the result of [the husband's] tort, was not assigned to [the wife] as a part of the dissolution proceeding. [The wife] therefore should not be held liable for the [husband's] intentional tort .... [Citation.]" (Ibid.) Finally, the court concluded, "as a matter of policy, we believe that to engraft the fraudulent transfer remedies onto a valid and approved marital settlement agreement would result in needlessly complicating the already emotionally laden dissolution process. It might result in the unraveling of a dissolution agreement painstakingly negotiated between the parties and their attorneys. We do not carry the rights of an alleged defrauded creditor that far, absent the express intent by the Legislature to do *437 so. [Plaintiff] has provided us with no evidence of such intent." (Id. at pp. 842-843, 86 Cal.Rptr.2d 733.)
We respectfully disagree with the conclusion reached in Gagan.
To begin with, we do not find any of the stated reasons for the court's decision persuasive. The Gagan court grounded its decision in part on the parties' failure to cite any authority on the issue. But the lack of precedent is not a determinative factor when a question of first impression is involved. The Gagan court also relied on the fact that the debt at issue there had been assigned to the husband, the one who incurred it. But the court's analysis on that point addresses only the effect of Family Code section 916 standing alone; it fails to consider the interplay between the Family Code and the UFTA. Finally, the Gagan court rested its decision on policy considerations, particularly its concern that hard-won property agreements might unravel in the face of claims by "alleged" defrauded creditors. But, as we have seen, marital settlements and even judgments are vulnerable in other situations permeated by fraud, a point that the Gagan court did not discuss.
In our view, more thorough analysis compels the contrary conclusionthat marital property settlements and judgments are subject to fraudulent transfer laws. We reach that conclusion by applying relevant principles of statutory construction and by considering analogous circumstances in which marital property divisions may be set aside. We do not believe that the Legislature intended the Family Code's provisions to operate as a shield for fraud. (Cf., Monastra v. Konica Business Machines, U.S.A., Inc., supra, 43 Cal.App.4th at p. 1643, 51 Cal. Rptr.2d 528 [compliance with Bulk Sales Act does not shield against UFTA liability].) If the Legislature intends to shield property divisions in dissolution actions from liability under the UFTA, it should adopt an express provision to that effect.
As a final point (albeit one that is unnecessary to our decision), we observe that the general rule we adopt here is bolstered by policy considerations specific to this case. Here, the creditor is owed child support.[25] California has a strong public policy in favor of providing adequate child support. (See, e.g., County of Kern v. Castle (1999) 75 Cal.App.4th 1442, 1455, 89 Cal.Rptr.2d 874; Stewart v. Gomez (1996) 47 Cal.App.4th 1748, 1754, 55 Cal.Rptr.2d 531.) That policy is expressed in statutes embodying the statewide uniform child support guideline. (See, Fam.Code, §§ 4050-4076.) "The guideline seeks to place the interests of children as the state's top priority." (Fam.Code, § 4053, subd. (e).) California's strong policy favoring child support also finds expression in other state laws. For example, various statutes elevate child support debts over other obligations. (See, e.g., Fam.Code, § 4011 [child support must be paid before other debts]; Fam.Code, § 1612, subd. (b) [child's right to support may not be abrogated by parents' agreement]; Fam.Code, § 4502 [child support judgment is exempt from renewal requirement]; Fam.Code, §§ 4550-573, 4600-4641 [court may order deposit of assets to secure child support arrearages].) Recognizing the high regard accorded child support in this state, we are particularly loath to subjugate a child support debt to a potentially fraudulent marital property division.
*438 In sum, we conclude that a creditor may challenge a marital property division as a fraudulent transfer.

II. Is there a material fact question as to whether the marital property division in this case was fraudulent?

A. Standard and Scope of Review.
Since summary judgment involves pure matters of law, we review a grant of summary judgment de novo. (Buss v. Superior Court (1997) 16 Cal.4th 35, 60, 65 Cal. Rptr.2d 366, 939 P.2d 766; Barton v. Elexsys Internal, Inc. (1998) 62 Cal.App.4th 1182, 1187, 73 Cal.Rptr.2d 212.) We are not bound by the trial court's stated reasons for its summary judgment. (Rubenstein v. Rubenstein, supra, 81 Cal.App.4th at p. 1143, 97 Cal.Rptr.2d 707.) "`We review the ruling, not its rationale. [Citation.]'" (Ibid.)
In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (Varni Bros. Corp. v. Wine World, Inc. (1995) 35 Cal. App.4th 880, 886-887, 41 Cal.Rptr.2d 740.)

B. Summary Judgment
A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc, § 437c, subd. (c).) To be entitled to judgment as a matter of law, the moving party must show by admissible evidence that the "action has no merit or that there is no defense" thereto. (Code Civ. Proc, § 437c, subd. (a).) A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. (Code Civ. Proc, § 437c, subd. (o(2)); Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 853, 107 Cal.Rptr.2d 841, 24 P.3d 493; Addy v. Bliss & Glennon (1996) 44 Cal.App.4th 205, 213-214, 51 Cal. Rptr.2d 642.) Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (o)(2). See, Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at p. 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.) Material facts are those that relate to the issues in the case as framed by the pleadings. (Juge v. County of Sacramento (1993) 12 Cal.App.4th 59, 67, 15 Cal. Rptr.2d 598.) The moving party's evidence is strictly construed, while that of the opponent is liberally construed. (Molko v. Holy Spirit Assn. (1988) 46 Cal.3d 1092, 1107, 252 Cal.Rptr. 122, 762 P.2d 46; Murillo v. Rite Stuff Foods, Inc. (1998) 65 Cal.App.4th 833, 840-841, 77 Cal.Rptr.2d 12.)

C. Fact Questions.
With those principles in mind, we review the evidence presented below in order to determine whether any material factual disputes require trial in this matter, either as to actual fraud or as to constructive fraud.

1. Actual Fraud.
Transfers made with actual intent to defraud creditors are actionable under Civil Code section 3439.04, subdivision (a). The question of actual fraudulent intent is always one of fact. (Bulmash v. Davis *439 (1979) 24 Cal.3d 691, 699, 157 Cal.Rptr. 66, 597 P.2d 469; Fross v. Wotton, supra, 3 Cal.2d at p. 390, 44 P.2d 350; Neumeyer v. Crown Funding Corp., supra, 56 Cal. App.3d at p. 183, 128 Cal.Rptr. 366.)
Here, the parties dispute whether Husband actually intended to defraud Plaintiff, his creditor, when he entered into the marital settlement agreement. Neither party offered direct evidence of Husband's intent. Husband submitted a declaration in support of his summary judgment motion, but it contains no express declaration that he lacked fraudulent intent. However, he did declare: "I feel that the M.S.A. § was fair and equitable under all the circumstances." In support of his assertion that the M.S.A. § was fair, Husband submitted evidence of the value of the couple's assets. Plaintiff disputed Husband's claim that the M.S.A. § provided a fair and equitable property distribution, citing her expert's low appraisal of value for Husband's medical practice. Additionally, in answers to interrogatories, which were part of the record below, Plaintiff stated her belief that the marital settlement agreement was executed in response to the court-imposed child support order and "in anticipation of further such orders." Plaintiffs answers to interrogatories also cited six "badges of fraud" constituting circumstantial evidence of Husband's actual fraudulent intent. (See Legislative Committee Comment Assembly 1986 Addition, 12A West's Ann. Civ.Code, supra, foll. § 3439.04, pp. 288-292.)[26] The record contains undisputed evidence of two of those badges of fraud: (1) the transfer was to an insider (a spouse), and (2) the claim predated the transfer. The evidence below was in conflict as to the other four other claimed badges of fraud; the parties disputed (1) whether Husband retained control over the transferred property, (2) whether the transfer was of substantially all of Husband's assets, (3) whether Husband received a reasonably equivalent value for the transferred assets, and (4) whether Husband became insolvent as a result of the transfer.
On appeal, Husband contends that the claimed "badges of fraud" are not evidence of fraudulent intent and, for that reason, they cannot create a material fact dispute. It is certainly true, as Husband points out, that the "presence of one or more badges of fraud does not create a presumption of fraud. Rather, it is merely evidence from which an inference of fraudulent intent may be drawn." (Legislative Committee CommentAssembly 1986 Addition, 12A West's Ann.Civ.Code, supra, foll. § 3439.04, p. 289.) It is equally true that an inference is not evidence. (Evid. *440 Code, § 140.) But the summary judgment statute requires the court to consider "all inferences reasonably deducible from the evidence ...." (Code Civ. Proc, § 437c, subd. (c).) In UFTA actions, "[p]roof of fraudulent intent often consists of `inferences from the circumstances surrounding the transaction .... [Citation.]'" (Eddy v. Temkin (1985) 167 Cal.App.3d 1115, 1122, 213 Cal.Rptr. 597, original italics.)
Of course, "[w]hen opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork. [Citation.]" (Joseph E. Di Loreto, Inc. v. O'Neill (1991) 1 Cal.App.4th 149, 161, 1 Cal.Rptr.2d 636.) Relying on that proposition, Husband argues that the trial court was justified in refusing to infer actual fraudulent intent from the evidence in this case. We disagree. Certainly, we recognize that the mere existence of some badges of fraud does, not always raise a triable issue of material fact. (See, e.g., Wyzard v. Goller, supra, 23 Cal.App.4th at p. 1190, 28 Cal.Rptr.2d 608 [despite the existence of several badges of fraud, no triable issue was raised, because the transfer was a preference in satisfaction of an undisputed antecedent debt].) This may be particularly true in the context of marital property divisions, for several reasons. For one thing, where the transfer is incident to a divorce, it will always be to an insider. For another thing, a seeming inequity in the division of property on divorce may not signal fraud where, for example, the spouse receiving the greater share has waived support. (See, e.g., Matter of Ottaviano (Bankr.D.Conn.1986) 63 B.R. 338, 341-342, and cases cited therein [release from spousal support obligation can constitute fair consideration for unequal marital property division]. Cf., In re Williams (Bankr.D.R.I.1993) 159 B.R. 648, 658 [particular transfer in lieu of spousal support fraudulent].) Thus the mere existence of one Or more badges of fraud in the dissolution context will not always raise a triable material fact question. Nevertheless, in the usual casewhether in the dissolution context or otherwise, it is for the fact-finder to weigh and consider the evidentiary value of any badges of fraud. (Bank of California v. Virtue & Scheck, Inc. (1983) 140 Cal.App.3d 1026, 1039, 190 Cal.Rptr. 54.)
And in this case, given the nature of the disputed evidence, a fact-finder could reasonably infer actual fraudulent intent without resorting to speculation. (See, e.g., Monastra v. Konica Business Machines, U.S.A., Inc., supra, 43 Cal.App.4th at p. 1644, 51 Cal.Rptr.2d 528; cf, Joseph E. Di Loreto, Inc. v. O'Neill, supra, 1 Cal. App.4th at p. 161, 1 Cal.Rptr.2d 636.) In particular, an inference that the property division was motivated by an intent to put assets out of Plaintiffs reach may be reasonably drawn from the fact that the M.S.A. § was executed less than a month after Husband first incurred the child support debt. Where the evidence presented in a summary judgment motion raises a reasonable inference, the judge hearing the motion is not permitted to ignore that inference, or to weigh it against other inferences or other evidence. (Murillo v. Rite Stuff Foods, Inc., supra, 65 Cal. App.4th at p. 841, 77 Cal.Rptr.2d 12.)
As the moving party, Husband had the initial burden of showing the lack of an actual intent to defraud Plaintiff. Assuming he made that showing, the burden then shifted to Plaintiff, who submitted evidence of several badges of fraud. In the factual context of this case, Plaintiffs evidence gives rise to a reasonable inference of Husband's actual fraudulent intent. That inference, in turn, creates a disputed *441 material fact issue that precludes the grant of summary judgment.[27]

2. Constructive Fraud.
In addition to its prohibitions against actual fraud, the UFTA prohibits constructive fraud. (See, Civ.Code, §§ 3439.04, subd. (b); 3439.05.) As relevant here, existing creditors may seek to avoid transfers by debtors who do not receive reasonably equivalent value in return, and who are either insolvent at the time of the transfer or become insolvent as a result of it. (Civ.Code, § 3439.05.)

a. Consideration.
"What constitutes a fair consideration is a question of fact [citation], and must be determined from the standpoint of the creditor." (Kirkland v. Risso (1979) 98 Cal.App.3d 971, 977, 159 Cal. Rptr. 798, citations omitted [decided under the UFCA].) In analyzing fair consideration (or equivalent value), the court compares what the debtor surrendered and received. (In re United Energy Corp., supra, 944 F.2d at p. 597; Stearns v. Los Angeles City School Dist., supra, 244 Cal. App.2d at pp. 733-734, 53 Cal.Rptr. 482.) In this case, whether Husband received equivalent value in the property division is a material disputed fact, as the trial court recognized and as Husband and Wife apparently concede.

b. Solvency.
Husband and Wife do not concede the existence of a material dispute concerning Husband's solvency after the property division.
Under the UFTA's definition, a "debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." (Civ.Code, § 3439.02, subd. (a).) As Plaintiff correctly points out, insolvency is measured by a "balance sheet test." (See, Costello v. Poole, supra, 217 Cal.App.2d at p. 559, 31 Cal.Rptr. 755; Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 1 (The Rutter Group 2001) ¶ 3:329, p. 3-100.)
To determine solvency, the value of a debtor's assets and debts are compared. By statutory definition, a debtor's assets exclude property that is exempt from judgment enforcement. (Civ. Code, § 3439.01, subd. (a)(2).) Retirement accounts are generally exempt. (See, Code Civ. Proc, §§ 704.115, subd. (b) [private pension plans generally exempt from judgment enforcement]; 703.070, subd. (a) [exemptions apply to child support judgments]. But see Code Civ. Proc, § 703.070, subd. (c), which authorizes trial court proceedings to "determine the extent to which the exempt property nevertheless shall be applied to the satisfaction of the judgment." Cf., Yaesu Electronics Corp. v. Tamura, supra, 28 Cal.App.4th at pp. 13-15, 33 Cal. Rptr.2d 283 [judgment debtor's pension plan was not exempt from enforcement because it was not designed and used for retirement purposes].) When Husband's exempt retirement account is excluded, his *442 sole post-dissolution asset is his medical practice. The medical practice had a value as low as $72,000 at the time of the divorce, according to Plaintiffs appraisal evidence below. The value of Husband's medical practice (his sole asset) is then compared to the value of his child-support obligation (his sole debt). Wife argues that Husband's total debt amounts to $750, his monthly support obligation,[28] since support is current. Plaintiff argues here, as she did below, that Husband's total debt is the present value of the entire child support obligation then due, which Plaintiffs expert opined was between $164,829 and $205,975. The trial court rejected Plaintiffs argument, determining that the unmatured portion of Plaintiffs child-support claim could not be fairly valued. Wife first defends the trial court's determination as a matter of law, pointing to the lack of legal authority to support Plaintiffs present-value calculations and arguing that Plaintiff has suffered no injury since Husband has kept his child support payments current. We disagree. The simple answer to Wife's contention is that the statute expressly recognizes an unmatured, contingent claim as a debt. (Civ.Code, § 3439.01, subds.(b), (d).) Wife next defends the trial court's determination on the facts, arguing that Plaintiffs expert erroneously calculated the future stream of payments by assuming a higher monthly support amount than what the court ordered. Wife offers her own present-value calculations, which are based on what she claims is the current support order of $750 per month. According to Wife's calculations, Husband's total child-support debt amounts to just under $92,000. As we noted above, however, Plaintiffs evidence (though disputed by Wife) indicates that Husband's sole nonexempt asset may be valued as low as $72,000. If Husband's asset was worth only $72,000 while the present value of his debt was at least $92,000, then he was insolvent. We express no opinion as to the ultimate outcome of the factual dispute concerning the value of Husband's assets and debts. We merely observeas should be apparentthat the material facts concerning solvency are in dispute. That factual dispute forecloses summary judgment in this case.

CONCLUSION
To summarize, as a matter of California law, we conclude that a property division incident to a marital dissolution is subject to creditor claims under the Uniform Fraudulent Transfer Act.
In addition, we find that there are material factual disputes on the question of whether the property division in this case constituted a fraudulent transfer under that Act, and those disputes preclude summary judgment here.

DISPOSITION
We reverse the judgment, and we remand this matter to the trial court for further proceedings.
Plaintiff shall have costs on appeal.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J., and O'FARRELL, J.[*]
NOTES
[1] The Fourth District Court of Appeal reached the opposite conclusion in Gagan v. Gouyd (1999) 73 Cal.App.4th 835, 86 Cal.Rptr.2d 733.
[2] Plaintiff moved to modify support in June 1998. At the same time, Plaintiff also sought an order requiring Husband to obtain life insurance to secure his future child support payments. The court denied Plaintiff's request for life insurance without prejudice to later renewal of that motion. That ruling is not at issue in this appeal.
[3] Husband's summary judgment motion was heard on July 22, 1999, the same day that the Fourth District filed its opinion in Gagan v. Gouyd, supra, 73 Cal.App.4th 835, 86 Cal. Rptr.2d 733. Thus, at the time of the hearing, there was no California authority that expressly excepted marital settlement agreements from the UFTA. It appears that the trial court and the parties operated on the assumption that the UFTA applied to this case.
[4] Civil Code section 3439.04 reads in full as follows:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
(a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."
(Civ.Code, § 3439.04. For the corresponding uniform provision, see UFTA 7A pi. II West's U. Laws Ann., supra, Uniform Fraudulent Transfer Act, § 4, p. 301.)
[5] Civil Code section 3439.05 reads in full as follows:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if (he debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."
(Civ.Code, § 3439.05. For the corresponding uniform provision, see UFTA 7A pt. II West's U. Laws Ann., supra, Uniform Fraudulent Transfer Act, § 5, p. 330.)
[6] The statute broadly defines "transfer" as follows:

`Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." (Civ. Code, § 3439.01, subd. (i).)
[7] The Family Code is organized into a number of subject-matter divisions. Portions of several divisions are relevant to the issues presented here, including provisions in Division 4 ("Rights and Obligations During Marriage"), Division 6 ("Nullity, Dissolution, and Legal Separation"), and Division 7 ("Division of Property"). Of particular importance to this case are the provisions concerning the liability of marital property found in Division 4, Part 3, at sections 900-1000 of the Family Code.
[8] In fact, creditor protection is mentioned throughout the legislative history of the 1984 statute. For example, the Assembly Judiciary Committee Staff Comments include this comment: "This bill, which is sponsored by the California Law Revision Commission, is an attempt to revise, clarify, and reorder the law dealing with liability of marital property for debts, In general, it preserves and strengthens a system of marital property liability that favors creditors. The source of the bill contends that a system favoring creditors also favors the spouses' obtaining credit." (See, Assem. Com. on Judiciary, Staff Comments on Assembly Bill No. 1460 (1983-1984 Reg. Sess.) as amended Jan. 3, 1984, p. 5, italics added.) The statute's legislative history also indicates that the Law Revision Commission amended its Recommendation Relating to Liability of Marital Property for Debts (Jan.1983) 17 Cal. Law Revision Com. Rep. 1, supra, pp. 23-24, with revised and additional comments. Those comments include this statement concerning former Civil Code section 4800, also amended by the Family Law Act: "A provision is added to [s]ection 4800[, subdivision] (b) to make clear the court's discretion to allocate debts in a way that will protect the rights of creditors." (See, Communication of Law Revision Com. concerning Assembly Bill No. 1460, attached to Alister McAlister, Assemblyman, letter to Gov. George Deukmejian, August 30, 1984; italics added.) And the Legislative Counsel's report to the Governor concerning the Family Law Act states: "This bill [Assembly Bill No. 1460] would amend [former Civil Code] [s]ection 4800 to require that, in assigning the liabilities to the parties in a division of community or quasi-community property, the court shall take into consideration factors such as the earning capacity of, and the exempt character of assets awarded to, the party to whom a liability is assigned, so as to protect the rights of the creditors to the extent practical, provided that, after deduction of the liabilities assigned to a party from the assets awarded to the party, the net division of the community and quasi-community property is equal, subject to any limitations provided by statute." (See, Marguerite Roth, Deputy Legislative Counsel, letter to Gov. George Deukmejian, September 27, 1984, italics added.) The protection of creditors' rights did not extend to the inclusion of certain proposed procedural protections, however. (See footnote 16, infra.)
[9] Family Code section 916 reads in full as follows:

"(a) Notwithstanding any other provision of this chapter, after division of community and quasi-community property pursuant to Division 7 (commencing with Section 2500):
"(1) The separate property owned by a married person at the time of the division and the property received by the person in the division is liable for a debt incurred by the person before or during marriage and the person is personally liable for the debt, whether or not the debt was assigned for payment by the person's spouse in the division.
"(2) The separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property. Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property.
"(3) The separate property owned by a married person at the time of the division and the property received by the person in the division is liable for a debt incurred by the person's spouse before or during marriage, and the person is personally liable for the debt, if the debt was assigned for payment by the person in the division of the property. If a money judgment for the debt is entered after the division, the property is not subject to enforcement of the judgment and the judgment may not be enforced against the married person, unless the person is made a party to the judgment for the purpose of this paragraph.
"(b) If property of a married person is applied to the satisfaction of a money judgment pursuant to subdivision (a) for a debt incurred by the person that is assigned for payment by the person's spouse, the person has a right of reimbursement from the person's spouse to the extent of the property applied, with interest at the legal rate, and may recover reasonable attorney's fees incurred in enforcing the right of reimbursement."
[10] The statutes under consideration here, and their predecessors, were adopted over the course of more than a century. In 1850, California first passed an act making fraudulent transfers voidable. (Stats.1850, ch. 114, § 1.) In 1872, that act was codified in amended form. (Civ.Code of 1872, former § 3439 et seq.) In 1939, the Legislature repealed that statute and adopted the Uniform Fraudulent Conveyance Act ("UFCA"). (Civ.Code, former § 3439 et seq., added by Stats. 1939, ch. 329, § 1. See 8 Witkin, Cal. Procedure, supra, Enforcement of Judgment, § 449.) In 1986, the Legislature replaced the UFCA with the Uniform Fraudulent Transfers Act. (Civ.Code, § 3439.01 et seq., added by Stats. 1986, ch. 383, § 1.)

Meanwhile, in 1984, the Legislature enacted the Family Law Act, which altered long-standing decisional law concerning post-marital liability. (Civ.Code, former § 5120.160, added by Stats. 1984, ch. 1671, § 9.) The Family Code was enacted in 1992, operative in 1994. The Family Code continued the substance of the Family Law Act as it related to post-marital liability. (Fam.Code, § 916, added by Stats.1992, ch. 162, § 10.)
[11] Family Code section 916 introduces its provisions with this phrase: "Notwithstanding any other provision of this chapter ...." The referenced chapter covers sections 910-916 of the Family Code.
[12] Division 4 of the Family Code has five parts. Part 1, General Provisions, includes definitions (ch. 1), a chapter on the relation of husband and wife (ch. 2), and a chapter on property rights during marriage (ch. 3). Part 2 deals with the characterization of marital property; it includes provisions on transmutation. Part 3, which contains section 916, governs the liability of marital property. Part 4 concerns the management and control of marital property. Finally, Part 5 provides for marital agreements. Overall, the principal emphasis of Division 4 of the Family Code appears to be on the rights and obligations of married persons inter se.
[13] Concerning the application of the UFTA to foreclosure sales and leveraged buy-outs, see Baird & Jackson, Fraudulent Conveyance Law and its Proper Domain (1985) 38 Vand.L.Rev. 829 [arguing against broad application of the UFTA generally, and specifically arguing against its application to foreclosure sales and leveraged buy-outs].
[14] By contrast, other suggestions from the State Bar were incorporated into the final version of the bill. For example, the Legislature followed the Bar's recommendation to delete the list of "badges of fraud" from the statute itself and to include them instead in the official comment. (See, State Bar Report, supra, p. 3; Wyzard v. Goller. supra, 23 Cal. App.4th at p. 1190, 28 Cal.Rptr.2d 608.)
[15] Perfection is the "[v]alidation of a security interest as against other creditors, usually by filing a statement with some public office or by taking possession of the collateral." (Black's Law Diet. (7th ed.1999) p. 1157, col. 2. See generally, Ayer, Secured Transactions in California Commercial Law Practice (Cont.Ed.Bar 1986 & 2000 supp.) Perfection, § 3.1 et seq., pp. 89-149.)
[16] That provision is Family Code section 851. As noted in the Law Revision Commission comment: "Section 851 continues former Civil Code [s]ection 5110.720 without change. When enacted in 1984 (as former Civil Code [s]ection 5110.720), this provision codified case law."

We note, however, that an opponent of the 1984 Family Law Act, Professor Carol Bruch, proposed amendments to that Act that would have given creditors the right to intervene in marital dissolution actions and challenge property divisions as fraudulent transfers. (See, Carol Bruch, Suggested Amendments [to Assem. Bill No. 1460], March 14, 1984; see especially her proposed addition of new Civil Code section, 4363.4, particularly subd. (d), (e).) The Law Revision Commission rejected Professor Bruch's suggested amendments, saying this: "Carol proposes adoption of a `bankruptcy' or `probate' type scheme for imposing liability after dissolution of marriage, involving notice and an opportunity to appear for creditors, and fraudulent conveyance standards. While this scheme is certainly theoretically interesting, the Commission rejected it because of the extensive procedures involved. It would transform simple divorce cases into elaborate proceedings involving many parties. We are unwilling to burden our bill with this; Carol can prepare and sponsor her own bill next session to adopt this sort of scheme if she is able to perfect it." (Nathaniel Sterling, letter to Assemblyman Alister McAlister, March 30, 1984, page 2.)
[17] According to a Law Revision Commission memorandum submitted prior to enactment of the Family Code, some 160 sections in fifteen different codes required conforming revisions as a result of the new code. (See, Stan Ulrich, Asst. Exec. Sec. of the Law Revision Com., mem. No. 92-18, dated February 28, 1992, with attached text of conforming revisions, submitted by Stan Ulrich, Assistant Executive Secretary of the Law Revision Commission.) The conforming revisions were carried in a separate bill, Assembly Bill 2641. (Ibid.) Although the conforming revisions were not substantive, several of the revised sections are noteworthy because they concern property transfers. One such provision expressly exempts marital property divisions from residential real property transfer disclosure requirements. (Civ.Code, § 1102.2, subd. (g).) Another exempts property transfers on divorce from documentary transfer taxation. (Rev. & Tax.Code, § 11927.) In short, conforming amendments were made to numerous provisions in many codes, including some involving property transfers, but the Legislature made no conforming amendments to the UFTA.
[18] See now, Family Code sections 1500-1620.
[19] There are also important differences between the Bankruptcy Code and the UFTA. (In re Cohen, supra, 199 B.R. at pp. 712, 716, 717.) None of those differences affects our analysis here, however.
[20] Bankruptcy Code section 548 provides as follows:

"(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily
"(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made or such obligation was incurred, indebted; or
"(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and [¶] (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; [¶] (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or [¶] (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured." (11 U.S.C. § 548.)
[21] We observe, however, that certain provisions in Part 5 of the Family Code suggest that an agreement for property division on divorce might be enforceable without consideration, if made in a valid premarital agreement. (See Fam.Code, § 1611, which provides that premarital agreements are enforceable without consideration, and Fam. Code, § 1612, subd. (a)(3), which permits parties to a premarital agreement to contract with respect to the disposition of property on divorce.) But this appeal does not involve a premarital agreement, and so we need not and do not decide whether consideration would be required in such event.
[22] As we discussed ante, the Legislature materially altered the post-marital liability of spouses in 1984 with the adoption of former Civil Code section 5120.160, the predecessor to Family Code section 916. (See, Dawes v. Rich, supra, 60 Cal.App.4th at p. 30, 70 Cal. Rptr.2d 72.)
[23] Although the issue has surfaced in several other cases, it was not squarely raised or resolved in any of them. (See, e.g., Whitehouse v. Six Corp. (1995) 40 Cal.App.4th 527, 531-532, 48 Cal.Rptr.2d 600 [creditor alleged fraudulent transfer resulting in part from marital property settlement; ex-wife resisted on other grounds]; In re Chenich (9th Cir. BAP (Cal.) 1988) 87 B.R. 101, 103, [bankruptcy trustee alleged fraudulent transfer resulting from marital settlement; summary judgment denied on another ground].)
[24] The Gagan court gave four reasons for refusing to apply fraudulent transfer law to a property division on divorce. (Gagan v. Gouyd, supra, 73 Cal.App.4th at pp. 842-843, 86 Cal.Rptr.2d 733.) The first reason related to the defendants' initial transfer of property to their trust several months prior to their divorce. (Id. at p. 842, 86 Cal.Rptr.2d 733.) Since no trust is involved in this case, that portion of the court's analysis is not relevant here.
[25] We recognize that Husband's child support is current and that Plaintiff is concerned only about future support. But that state of facts does not affect our analysis or alter our conclusion. On its face, the UFTA defines "claim" to include "unmatured" obligations. (Civ.Code, § 3439.01, subd. (b).)
[26] The "badges of fraud" listed in the Legislative Committee Comment are as follows:

"(a) Whether the transfer or obligation was to an insider. [Citations.]
"(b) Whether the debtor had retained possession or control of the property transferred after the transfer.
"(c) Whether the transfer or obligation was disclosed or concealed. [Citation.]
"(d) Whether the debtor was sued or threatened with suit before the transfer was made or obligation was incurred. [Citations.]
"(e) Whether the transfer was of substantially all the debtor's assets. [Citation.]
"(f) Whether the debtor has absconded.
"(g) Whether the debtor had removed or concealed assets.
"(h) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. [Citation.]
"(i) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. [Citation.]
"(j) Whether the transfer had occurred shortly before or shortly after a substantial debt was incurred.
"(k) Whether the debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor. [Citation.]"
(See Legislative Committee CommentAssembly 1986 Addition, 12A West's Ann.Civ. Code, supra, foll. § 3439.04, p. 289.)
[27] We emphasize that Plaintiff need only demonstrate the existence of a disputed material fact issue in order to survive summary judgment. In order to prevail at trial, of course, Plaintiff must carry the much heavier burden of proving fraud by the appropriate standard, which is preponderance of the evidence. (See, Whitehouse v. Six Corp., supra, 40 Cal.App.4th at pp. 533-534, 48 Cal.Rptr.2d 600, discussing Liodas v. Sahadi, supra, 19 Cal.3d at pp. 292-293, 137 Cal.Rptr. 635, 562 P.2d 316; Gagan v. Gouyd, supra, 73 Cal. App.4th at p. 839, 86 Cal.Rptr.2d 733. Compare, Reddy v. Gonzalez, supra, 8 Cal.App.4th at p. 123, 10 Cal.Rptr.2d 55 [fraud must be proved by clear and convincing evidence]; Aggregates Associated, Inc. v. Packwood (1962) 58 Cal.2d 580, 588, 25 Cal.Rptr. 545, 375 P.2d 425 [same, disapproved on that point by Liodas v. Sahadi, supra, 19 Cal.3d at p. 293, 137 Cal.Rptr. 635, 562 P.2d 316].) We express no opinion about Plaintiff's prospects for succeeding at trial.
[28] Counsel made the same assertion at oral argument. Parenthetically, we note that the record indicates that Husband's monthly child support obligation was $1,153, not $750, at the time he moved for summary judgment. We emphasize, however, that we are not concerned with the amount of child support, which is a function of Husband's earnings or earning capacity, except to the extent that it bears on the question of Husband's solvency.
[*] Judge of the Monterey Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.